**Motion for Rehearing Granted in Part and Overruled in Part; Opinion of March 13, 2012 Withdrawn; Affirmed in Part and Reversed and Remanded in Part and Substitute Opinion filed April 26, 2012.**



**In The**

# Fourteenth Court of Appeals

---

### NO. 14-10-00759-CV

---

### CONNIE VASQUEZ HARRISON, Appellant

### V.

### CLIFFORD LAYNE HARRISON, Appellee

---

**On Appeal from the 311th District Court
Harris County, Texas
Trial Court Cause No. 2006-68864**

---

## S U B S T I T U T E   O P I N I O N

We grant the motion for rehearing in part and overrule in part; we withdraw our opinion dated March 13, 2012, and issue the following substitute opinion.

Connie Vasquez Harrison appeals from the trial court's divorce decree on numerous grounds. Most of the parties' appellate arguments focus on the circumstances surrounding the withdrawal of Connie's attorney, over Connie's objection, 40 days before the parties picked a jury, and the trial court's subsequent denial of Connie's motion to continue the trial in light of her attorney's withdrawal. We affirm in part and

reverse and remand in part.

## Background

Analysis of the dispositive issues in this case requires a detailed chronology of the events leading up to a jury trial that began on March 22, 2010, and concluded on April 13, 2010.

Connie and Clifford Harrison married on February 26, 2000, and ceased living together as husband and wife in January 2006. They have a son who was born in 2000 and a daughter who was born in 2004. Clifford is a lawyer and at all relevant times he was represented by counsel in the divorce proceedings. Connie has a law degree but never has practiced law.

Clifford filed his original petition for divorce on October 30, 2006, asserting that the "marriage has become insupportable because of discord or conflict of personalities between [Clifford] and [Connie] that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation."

At the time Clifford filed for divorce, Connie was represented by attorney Robert J. Piro in connection with a prior request for a protective order against Clifford. She filed a motion on December 7, 2006, asking the trial court to sign an order substituting Bobby K. Newman as her attorney of record and discharging Piro. The trial court granted Connie's motion on December 8, 2006, finding that the substitution was "not sought for delay only."

Connie filed a second motion for substitution of counsel on March 30, 2007, asking the trial court to discharge Newman and substitute Joan F. Jenkins as her attorney of record. The trial court granted Connie's motion on the same day and found that the substitution was "not sought for delay only."

Connie filed a motion for interim fees on April 3, 2007, asking the trial court to order Clifford to "pay reasonable interim attorney's fees and expenses, including but not limited to fees for appraisals, accountants, actuaries, and so forth, in an amount not less

2

than $25,000" because Connie is "not in control of sufficient community assets to pay attorney's fees and anticipated expenses."

The trial court signed temporary orders on May 15, 2007; among other things, the temporary orders addressed attorney's fees. The trial court ordered Clifford to pay: (1) "$10,000.00 to the Bobby Newman Trust Account . . . which sum represents interim attorney fees on behalf of [Connie] and is acknowledged as having already been paid;" (2) "$10,000.00 to Ann Knight . . . which sum is acknowledged as having already been paid and which sum is to be used to pay in full the promissory note executed by [Connie] to Ann Knight for payment of attorney fees;" and (3) "$40,000.00 to Joan F. Jenkins on or before June 1, 2007." The trial court also appointed Heather Hughes as amicus attorney and ordered Clifford to pay her $10,000 by June 1, 2007.

Jenkins filed a motion to withdraw as Connie's attorney on July 25, 2007, stating that good cause existed for her withdrawal "in that she is unable to effectively communicate with Connie [] in a manner consistent with good attorney-client relations." Connie consented to Jenkins's motion to withdraw; Clifford and amicus attorney Hughes did not oppose it. The trial court granted Jenkins's motion on August 15, 2007.

Michael Phillips announced his appearance as Connie's attorney of record on October 5, 2007. According to one of Connie's filings, Phillips ceased to represent Connie in December 2007; Connie hired J.D. Bucky Allshouse to represent her in December 2007.

On January 10, 2008, Connie filed a motion for substitution of counsel asking the trial court to "enter an order substituting herself pro se and discharging J.D. Bucky Allshouse as attorney of record." The trial court granted Connie's motion on January 11, 2008, finding that the substitution was "not sought for delay only."

Clifford filed his first amended original petition for divorce on January 15, 2008. Joel A. Nass made his appearance as Connie's counsel on February 4, 2008. On the same

day, Connie filed her second amended counter-petition for divorce alleging, among other things, claims for waste and breach of fiduciary duty, assault, battery, and intentional infliction of emotional distress.

The trial court called the case to trial and swore in the parties on February 11, 2008. Shortly after Clifford began testifying, the proceedings were recessed when Clifford and Connie asked the trial court not to go forward with the trial because they wanted to attempt reconciliation. The case remained largely dormant for almost two years.

On May 11, 2009, Connie and Clifford entered into a Rule 11 agreement to "reset the jury trial setting to the period of March 22, 2010 through March 26, 2010." The trial court signed the agreement. At a subsequent hearing, Clifford took the position that the parties continued to be "in trial" during the period between May 2009 and March 2010. The record is largely silent about events that transpired between May 2009 and January 2010.

Nass filed a motion to withdraw as Connie's counsel on January 26, 2010. Nass stated in his motion that "[g]ood cause exists for withdrawal" because Connie "represents that she does not have the financial resources to satisfy the contractual obligation to pay the firm." The trial court held a hearing on Nass's motion to withdraw as Connie's counsel on February 10, 2010. Connie opposed Nass's motion at the hearing and asked for interim attorney's fees. *See* Tex. Fam. Code Ann. § 6.502(a)(4) (Vernon 2006) ("While a suit for dissolution of marriage is pending and on the motion of a party or on the court's own motion after notice and hearing, the court may render an appropriate order . . . ordering payment of reasonable attorney's fees and expenses.")

The trial court did not award interim fees. Instead, it granted Nass's motion to withdraw and ordered the parties to attend mediation. The trial court signed the order allowing Nass to withdraw on March 2, 2010, finding that good cause existed for withdrawal.

Connie filed a motion for continuance on March 2, 2010, requesting that the trial court reset the case for trial in September 2010. On March 8, 2010, Connie filed a first amended motion for continuance. The trial court held a hearing on Connie's motion for continuance on March 9, 2010, denied Connie's motion, and ordered the parties to attend mediation.

Connie filed a motion for interim fees on March 12, 2010; she asked the trial court to award no less than $75,000 for interim attorney's fees and expenses because she lacked "control of sufficient community assets to pay attorney's fees and anticipated expenses." On the same day, Connie also filed a motion for reconsideration of the trial court's ruling denying her motion to continue the March 22, 2010 trial setting.

Connie and Clifford appeared in the 311th District Court on March 22, 2010, to resume the recessed trial that began more than two years earlier on February 11, 2008.

At that time, Connie asserted that she was not ready; she was not representing herself; she did not have legal representation; she had asked for legal counsel; and her due process rights were being violated because she had no legal counsel. Connie gave the trial court an emergency motion for temporary relief and advised the trial court that she would file a petition for writ of mandamus regarding the trial court's denial of her motion for continuance and motion for interim fees. Connie also argued her motion to reconsider the motion for continuance "so that [she] may be legally represented in a trial." Clifford, through counsel, opposed Connie's motion to reconsider, and amicus attorney Hughes stated that she had no position on the request to reconsider "other than I am prepared and ready to go to trial." The trial court denied the motion to reconsider. The trial court refused to "entertain any other requests for temporary or pretrial relief by either party."

Because the parties signed a Rule 11 agreement to reset the February 2008 bench trial as a jury trial, the trial court ordered a mistrial as to "the trial that was commenced in this case on February 11, 2008." The trial court requested that a jury panel be seated, and Clifford, through counsel, and Connie conducted voir dire. Trial continued on March 23,

5

2010.

The next day, on March 24, 2010, Connie filed an emergency motion for temporary relief asking the First Court of Appeals to stay proceedings in the trial court while relator's petition for writ of mandamus was being considered. Connie simultaneously filed a petition for writ of mandamus arguing that the trial court abused its discretion by (1) granting Nass's motion to withdraw after trial had commenced; (2) forcing Connie to attend mediation without legal representation; (3) denying Connie's continuance and motion for attorney's fees; and (4) denying Connie's right to a jury trial. The court of appeals granted a stay; it later lifted the stay and denied Connie's petition for writ of mandamus. Trial resumed on March 26, 2010.

In the meantime, Connie filed mandamus papers in the Supreme Court of Texas. The supreme court denied Connie's emergency motion for temporary relief on March 26, 2010, and asked Clifford to file a response to Connie's petition for writ of mandamus by April 5, 2010. Connie filed a reply to Clifford's mandamus response in the supreme court on April 6, 2010. She also filed a copy of this document in the trial court proceedings on the same date. Exhibit 11 to the reply lists 25 attorneys who declined to represent Connie when she contacted them after Nass withdrew; Connie stated that most of these attorneys declined to represent her because of the impending trial. The Texas Supreme Court denied Connie's request for mandamus relief on May 14, 2010.

The jury heard closing arguments by Clifford's counsel and Connie on March 31, 2010, and the jury retired for deliberations. Deliberations were postponed until April 13, 2010, because one of the jurors suffered an injury.

After resuming deliberations on April 13, 2010, the jury returned its verdict. The jury determined that (1) Connie and Clifford should be joint managing conservators of their two minor children; (2) Connie should have the exclusive right to designate the primary residence of the children within Harris County; (3) certain property was separate property and other property was community property; (4) Clifford assaulted Connie on May 23, 2005; and (5) Clifford assaulted Connie on January 12, 2006. The jury awarded

6

a total of $30,000 to Connie in connection with the two assault findings. The trial court granted the divorce and announced that it would review the parties' proposed property divisions and "prepare a written rendition with respect to any remaining conservatorship issues and any property issues."

The trial court signed the final divorce decree on June 21, 2010. Connie filed a motion for new trial on June 25, 2010, asking the trial court to "grant a new trial in the interest of justice and fairness." The motion was denied by operation of law. Connie filed her notice of appeal on August 6, 2010.

## Analysis

Connie presents five issues on appeal, contending that (1) the trial court abused its discretion by granting Nass's motion to withdraw as counsel during trial and denying her motion for continuance; (2) the trial court's judgment should be reversed because Clifford's tracing evidence was improper; (3) the trial court's refusal to allow Connie to make a bill of exception constituted reversible error; (4) the trial court erred by improperly refusing to assign a value to household furnishings of the community estate; and (5) the trial court erred by refusing to account for a Galveston property in the final divorce decree. We conclude that the first issue is dispositive.

Assessing Connie's first issue involves the interrelationship between two discretionary calls. The first is the trial court's decision to let Connie's attorney Nass withdraw 40 days before the parties picked a jury. The second is the trial court's subsequent decision to deny Connie's request for a continuance of the trial after her attorney withdrew.

## I.     Standard of Review

We review the granting of a motion to withdraw as counsel for an abuse of discretion. *Sims v. Fitzpatrick*, 288 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We likewise review the denial of a motion for continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). A

7

trial court abuses its discretion when it acts unreasonably or in an arbitrary manner without reference to guiding rules or principles. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002).

## II.     Standards Governing Withdrawal and Continuance

An attorney may withdraw from representing a party only upon written motion for good cause shown.  *See* Tex. R. Civ. P. 10.  Texas Rule of Civil Procedure 10, entitled "Withdrawal of Attorney," does not define "good cause."  *Id.* However, the Texas Disciplinary Rules of Professional Conduct articulate considerations relevant to the consideration of Rule 10 motions.  *See* Tex. Disciplinary Rules Prof'l Conduct R. 1.15, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (Vernon 2005); *In re A.R.*, 236 S.W.3d 460, 474 (Tex. App.—Dallas 2007, no pet.) (op. on rehearing); *In re Posadas USA, Inc.*, 100 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, orig. proceeding). Thus, "[b]efore a trial court allows an attorney to withdraw, it should see that the attorney has complied with the Code of Professional Responsibility."  *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).

Texas Disciplinary Rule of Professional Conduct 1.15, entitled "Declining or Terminating Representation," provides, among other things, that a lawyer shall not withdraw from representing a client "unless withdrawal can be accomplished without material adverse effect on the interests of the client;" the client "fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services, including an obligation to pay the lawyer's fee as agreed, and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;" and the representation "will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client."  Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(1), (5), (6).

When the ground for a continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to her own fault or negligence. *Villegas*, 711 S.W.2d at 626.  Because the right to counsel is a valuable right, its unwarranted denial is reversible.  *Id.*  "[W]hen a trial court allows an attorney to

withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Id.*

Relying on *Villegas*, Connie argues that the trial court should have (1) denied Nass's motion to withdraw; or (2) granted her motion for continuance after allowing Nass to withdraw. She contends that failure to be represented by counsel at trial was not due to her own fault or negligence.

Relying on Texas Disciplinary Rule of Professional Conduct 1.15 and *In re Daniels*, 138 S.W.3d 31, 33-35 (Tex. App.—San Antonio 2004, orig. proceeding), Clifford argues that the trial court acted within its discretion when it granted Nass's motion to withdraw because (1) Connie failed to pay Nass's fees; (2) continuing "representation through a trial would have been financially burdensome" to Nass; (3) Connie did not show she had tried to borrow funds to pay Nass; and (4) "[o]ver the course of two full years, from February 11, 2008, to February 10, 2010, neither Connie nor Nass presented a motion to the trial court seeking the payment of fees beyond the $91,000 Nass had already received."

Clifford argues that the trial court acted within its discretion in denying a continuance after Nass withdrew as Connie's counsel because (1) Connie had 55 days' notice of Nass's motion to withdraw, the trial court granted Nass's motion to withdraw 40 days before trial, and Connie received her file from Nass after his withdrawal; (2) Connie never made a motion for interim fees or showed any effort that she attempted to borrow money to pay the fees; (3) the trial court was allowed to consider the history of this case and the fact that Connie had retained six attorneys, including Nass, and "was not a novice at hiring lawyers;" and (4) Connie was not deprived of her right to be represented by counsel at trial, but simply failed to secure counsel.

## III. Application of Standards

### A. Withdrawal of Representation

Nass filed a motion to withdraw as Connie's counsel on January 26, 2010,

asserting that "[g]ood cause exists for withdrawal" because Connie "represents that she does not have the financial resources to satisfy the contractual obligation to pay the firm." On February 10, 2010, the trial court held a hearing on Nass's motion to withdraw. Clifford appeared at this hearing with his counsel, as did amicus attorney Hughes. Nass did not appear at the hearing. Instead, a firm associate, Courtney Hoff, appeared at the hearing to argue Nass's motion.

Hoff argued that the Nass firm had not been paid attorney's fees since February 2008, and stated that the firm was not in a position to continue representing Connie. Clifford did not object to Nass's withdrawal, provided that the case proceeded to trial as scheduled on March 22, 2010. Amicus attorney Hughes also did not oppose Nass's motion to withdraw "provided it does not delay the trial setting."

Connie strenuously opposed Nass's motion throughout the hearing. Connie argued that she and Clifford had attempted to reconcile and had agreed that all attorneys would be paid. She stated that Clifford paid his attorney and Connie's attorney from a joint account; according to Connie, Clifford paid Nass about $90,000 for representing Connie between January 19, 2007, and February 11, 2008. She stated that $5,000 remained to be paid to Nass.

Connie also stated that, when she spoke to Nass in January 2010, he asked her to appear before the trial court and request that fees be awarded so he "would continue" to represent her. Connie stated that "Nass was supposed to appear" at the withdrawal hearing and question her before the court. Connie asked the trial court to award her interim fees from a Wells Fargo joint account so she could pay Nass. Clifford opposed the request for interim fees at the hearing because no motion for interim fees had been filed before the hearing; he asserted that the parties are "in the middle of trial" and fees "can be handled at the time of trial."

Hoff stated that she did not believe Clifford had paid the firm $90,000; she recalled that the parties entered into a Rule 11 agreement and believed that Clifford had paid the firm approximately $30,000. Relying on a docket sheet entry, the trial court

10

stated that payment of $40,000 was ordered to Nass on February 5, 2008. Clifford confirmed that, on or before February 20, 2008, his attorney's fees were paid and Connie's fees also were paid based on the invoices Nass submitted. Clifford stated he had not "heard anything about the fees until now."

The trial court asked Connie if she disputed Nass's contention that she had not followed "the fee agreement or fee contract with Mr. Nass and his firm." Connie responded that (1) she believed she had "followed" the agreement; (2) Nass "just wants money;" (3) Clifford had "total access and control to all our money, and that has kept [Connie] from gaining counsel in a way that [Clifford] is able to;" (4) she had to borrow $40,000 from a friend to pay one attorney and had to borrow money from another friend to pay another attorney; (5) the parties "should have a level field of being able to pay our attorneys so hopefully we can bring finality to his case;" and (6) not having counsel "a month or six weeks before trial would gravely prejudice" her and the parties' children.

Clifford contended that "there has been a level playing field." He noted that Nass was Connie's sixth attorney, and asserted that the case could not be resolved if Connie was allowed to retain "a new lawyer and then that new lawyer obviously needs an opportunity to get brought up to speed." Connie responded, "[Clifford]'s answer, that's what I'm arguing. I'm actually arguing [Clifford's] argument, that a new attorney not be placed on this case. Mr. Nass has an overwhelming amount of knowledge; and, again, I believe it's around about $90,000 that he was paid for three weeks . . . And it hasn't been a level playing field because I haven't had the money to hire my — to pay attorneys."

Hoff contended that the firm had not received payment from Connie in two years, and that Nass did not want to withdraw sooner because "the case was put on hold for a period of time" and the firm wanted to give Connie the "opportunity to figure out if she was going to be able to find the funds for us or if she was going to find another lawyer." Hoff did not know the exact amount Connie owed the firm, but claimed that Connie owed more than $5,000. Hoff did not present any unpaid invoices reflecting fees owed to Nass, nor did Hoff indicate what sum, if any, Nass had requested in order to continue

11

representing Connie in the divorce action.

The trial court granted Nass's motion to withdraw and ordered the parties to attend mediation. The trial court signed the order allowing Nass's withdrawal on March 2, 2010; the trial court expressly found that good cause existed for Nass's withdrawal as counsel.

To support his contention that the trial court did not abuse its discretion by granting Nass's motion to withdraw, Clifford argues that Disciplinary Rule 1.15 allows an attorney to withdraw for nonpayment of fees "even though the withdrawal may have a material adverse effect upon the interests of the client." However, Rule 1.15 addresses more than the nonpayment of fees; Rule 1.15 also provides that an attorney "shall not withdraw from representing a client unless the client fails **substantially** to fulfill an obligation" to pay an attorney for services. Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b)(5) (emphasis added).

For two reasons, this record raises significant questions about whether Connie **substantially** failed to fulfill her obligation to pay Nass.

First, it is unclear how much Nass had been paid at the time of the February 10, 2010 hearing. Connie claimed that Clifford had paid Nass approximately $90,000 for services performed between January 19, 2007 and February 8, 2008. Hoff could not state the amount Nass had been paid, but stated that she "believed" Clifford's counsel "was saying that they had given my office" about $30,000. The trial court stated, "I see a docket sheet entry from February 5th, '08 ordering that Mr. Nass be paid $40,000 from some specific account." Clifford agreed with the trial court at the time and stated that he paid Nass according to the invoices Nass's office submitted. Clifford asserts on appeal that Nass already had received $91,000 at the time of the withdrawal hearing.

Second, it is unclear how much Connie still owed to Nass and how much he required to continue participating in the case. Connie claimed that she owed Nass $5,000. Hoff disputed that amount. When the trial court questioned her regarding the

12

amount Nass was owed, Hoff answered, "I don't have the exact number with me." Hoff did not present any invoices. Hoff did not state how much money, if any, Nass requested for continued representation.

Again relying on Disciplinary Rule 1.15, Clifford contends that the trial court acted within its discretion by granting Nass's motion to withdraw because continuing the representation through a trial "would have been financially burdensome." Disciplinary Rule 1.15(b)(6) provides that an attorney "shall not withdraw from representing a client unless the representation will result in an **unreasonable** financial burden" on the attorney. *Id*. 1.15(b)(6) (emphasis added). Nass did not argue in his motion to withdraw that continuing to represent Connie would result in an unreasonable financial burden. Nor did Hoff argue that continuing to represent Connie would result in an unreasonable financial burden.

Clifford further argues that Connie "provided absolutely no testimony of any nature indicating efforts she had made to borrow funds to pay Nass the fees he required for continued representation." He emphasizes that Connie had borrowed money in the past from friends and family to pay attorney's fees. Clifford also emphasizes that neither Connie nor Nass had presented a motion for payment of fees since February 11, 2008.

The case was called to trial on February 11, 2008; however, Connie and Clifford almost immediately asked the trial court for a recess to attempt reconciliation. On May 11, 2009, Connie and Clifford agreed to reset trial to March 22, 2010. During this period, the parties technically remained "in trial." The record is unclear as to how long the parties actually attempted to reconcile, whether Nass provided any services between February 2008 and February 2010, and what fees were owed for such services. Hoff argued that the firm had not "received any money from [Connie] in two years; and since that time the case was put on hold for a period of time, and that's why we didn't withdraw sooner. We were giving her the opportunity to figure out if she was going to be able to find the funds for us or if she was going to find another lawyer."

Nass bore the burden to show good cause for withdrawal. *See* Tex. R. Civ. P. 10.

13

Nothing in the record suggests that Connie was unwilling to pay attorney's fees or was able to borrow funds for fees but unwilling to do so. Connie argued that she had no access to funds because Clifford "has total access and control to all our money." Although the trial court had awarded interim fees on February 5, 2008, Nass did not file a motion requesting interim fees in connection with the March 2010 trial setting. The record indicates that instead of filing a motion for interim fees, Nass instructed Connie to ask the trial court to award fees at the February 10, 2010 withdrawal hearing. Clifford opposed the request for an award of interim fees at the hearing because no motion for interim fees was before the court; he asserted that the parties are "in the middle of trial" and fees "can be handled at the time of trial."

The record does not reveal why no request for interim fees was filed. The trial court did not order interim fees on its own motion. *See* Tex. Fam. Code Ann. § 6.502(a)(4).

The upshot is that Nass was allowed to withdraw after invoking Connie's lack of "financial resources to satisfy the contractual obligation to pay the firm" 40 days before a recessed trial was scheduled to resume in a highly contentious divorce involving substantial assets and a custody dispute. Neither the amount already paid to Nass nor the amount still owed to Nass ever was clearly established. No motion seeking interim fees was filed before the February 2010 hearing. While we are not prepared to say that allowing Nass to withdraw under these circumstances was an abuse of discretion, we note that allowing withdrawal in this instance approaches the outer limits of discretion.

The trial court's exercise of discretion in allowing Nass's withdrawal under these circumstances informs our review of the accompanying decision to deny a continuance following Nass's withdrawal — and, in particular, the analysis of whether Connie was at fault for the withdrawal of her attorney shortly before the trial was scheduled to resume.

## B. Continuance

Connie argues that allowing Nass to "withdraw from representing her 40 days

14

before trial against her wishes, and denying her subsequent motion for continuance" was an abuse of discretion. She contends that the trial court should have granted her motion for continuance because she demonstrated that Nass's withdrawal was not her fault or caused by her negligence.

After the trial court granted Nass's motion to withdraw over Connie's objection on February 10, 2010, Connie filed a motion for continuance on March 2, 2010. In her motion, she asserted that (1) she is a stay-at-home mom, and that Clifford had sole access and control over the couple's financial accounts out of which he paid his own attorney; (2) she "was astonished that Mr. Nash failed to appear at the [withdrawal] hearing after he informed her that he would personally appear so that he could petition the court by questioning [her] for additional fees;" (3) she requested interim attorney's fees at the withdrawal hearing but Clifford objected to her request and the trial court did not award her attorney's fees; (4) Clifford claimed that she delayed the February 2008 trial date but in fact Clifford asked for the trial date to be reset from February 2008 to September 2008 and then to June 2009; (5) she "counseled with several attorneys in an effort to retain representation before the March 22, 2010 trial date" but no attorney was willing to represent her without at least a six-month continuance; (6) good cause existed for a continuance because the absence of her attorney was not caused by Connie or by her negligence; and (7) forcing her to represent herself at trial would impede her right to a fair trial.

In her motion for continuance, Connie also recounted the list of attorneys who had represented her since Clifford filed for divorce. Connie was represented by (1) Robert Piro from January 2006 to November 2006 for the purpose of obtaining a protective order; (2) Bobby Newman from November 2006 to March 2007; (3) Joan Jenkins from March 2007 to September 2007; (4) Michael Phillips from October 2007 to December 2007; (5) Bucky Allshouse from December 2007 to January 2008; and (6) Joel Nass from January 18, 2008, until the trial court granted Nass's motion to withdraw on February 10, 2010, and signed its order on March 2, 2010.

15

Connie filed her first amended motion for continuance on March 8, 2010. In addition to asserting her previously asserted grounds for a continuance, Connie argued that she had a right to be represented by qualified counsel and that she was not qualified to represent herself because she never practiced family law and "never participated in a trial as a lawyer." The trial court held a hearing on Connie's motion for continuance on March 9, 2010. During the hearing, Connie asked the trial court to grant her motion because she "fervently" had objected to Nass's withdrawal and had asked the trial court to award interim fees to pay Nass so he could remain her counsel and the case could proceed with trial as set. Connie stated she had been unable to find another attorney to represent her on the eve of trial because the attorneys she contacted were afraid to "place themselves in a malpractice liability position" by taking her case.

Clifford opposed Connie's motion for continuance, arguing that (1) it was not his fault that Connie "has been through six lawyers;" (2) he and his counsel as well as amicus attorney Hughes had cleared their schedules to proceed with trial as scheduled; and (3) his witnesses and experts were ready to appear. Amicus attorney Hughes also opposed Connie's continuance motion, arguing that the parties and the children needed finality. The trial court denied Connie's motion for continuance and ordered the parties to attend mediation before the scheduled trial.

Connie points to *Villegas* in arguing that she was entitled to a continuance to secure new counsel after the trial court allowed Nass to withdraw over objection shortly before trial because she was not at fault for causing Nass's withdrawal. *See Villegas*, 711 S.W.2d at 626. In that case, Villegas was represented by two attorneys; one attorney withdrew 22 days before trial and the second attorney was allowed to withdraw two days before trial. *Id*. at 625. Villegas asked for a continuance so he could retain a new attorney to represent him at trial, but the trial court refused Villegas's request for a continuance. *Id*. at 625-26. The supreme court held that "the trial court abused its discretion because the evidence shows Villegas was not negligent or at fault in causing his attorney's withdrawal" and too little time remained for Villegas to "find a new

16

attorney and for that new attorney to investigate the case and prepare for trial." *Id.* Concluding that "the trial court should either have denied the attorney's motion to withdraw or granted the party's motion for continuance," the supreme court reversed and remanded for a new trial. *Id.*

Clifford emphasizes that trial counsel in *Villegas* withdrew two days before trial and refused to turn over the client's case file. According to Clifford, the "circumstances are not comparable to Connie's case" because Connie had 55 days' notice of Nass's motion to withdraw; the motion was granted 40 days before trial; Connie received her file from Nass after his withdrawal; Connie never made a motion for interim fees; and Connie showed no efforts to borrow money from friends to pay her fees as she had done in the past. Clifford supports his argument by citing *State v. Crank*, 666 S.W.2d 91, 95 (Tex. 1984), *Gillie v. Boulas*, 65 S.W.3d 219, 223 (Tex. App.—Dallas 2001, pet. denied), and *Van Sickle v. Stroud*, 467 S.W.2d 509, 511 (Tex. Civ. App.—Fort Worth 1971, no writ).

*Crank* does not support Clifford's argument. The supreme court held that the trial court acted within its discretion when it denied Crank's motion for continuance after he "voluntarily discharged his attorney and reaffirmed the discharge after his requested continuance was denied." *Crank*, 666 S.W.2d at 94-95. The supreme court noted that counsel had not withdrawn voluntarily due to an emergency; rather, Crank knew of the scheduled hearing but waited until the morning of the hearing to discharge his attorney and ask for a continuance. *Id.* at 94. Here, in contrast, Connie did not discharge Nass; she strenuously opposed Nass's withdrawal and filed a motion for continuance after trying without success to retain another attorney.

Relying on *Gillie*, Clifford argues that "Connie was not *deprived* of her right to be represented by counsel at trial; rather Connie *failed* to secure counsel." He misplaces his reliance on this case. In *Gillie*, the court of appeals held that the trial court did not abuse its discretion by denying Gillie's motion for continuance after allowing his counsel to withdraw because the "trial court allowed almost four months for Gillie to obtain new counsel and for the new counsel to investigate the case and prepare for trial." 65 S.W.3d

17

at 222. Here, in contrast, the trial court did not allow Connie four months to secure new counsel after allowing Nass to withdraw; Connie had 40 days to secure new counsel.

*Van Sickle* does not support Clifford's contention that the trial court acted within its discretion by denying Connie's motion for continuance "even assuming Connie's claim of lack of fault." Van Sickle's trial counsel withdrew ten days before the case was called for trial. 467 S.W.2d 509, 511. Van Sickle failed to appear at trial. *Id*. Van Sickle later retained new counsel who filed a motion for new trial but never complained of the absence of counsel at trial. *Id*. The court noted that Van Sickle had been represented by four sets of attorneys and concluded he knew how to obtain counsel; yet, Van Sickle presented no evidence about why he "failed to make arrangements for counsel" once his trial counsel was allowed to withdraw. *Id*. The court concluded that, in the absence of evidence showing that Van Sickle was not at fault for his trial counsel's withdrawal and was diligent in finding new counsel, the trial court acted within its discretion in denying Van Sickle's motion for continuance. *Id*. Here, in contrast, Connie unsuccessfully attempted to retain new counsel; none of the multiple attorneys she contacted would agree to represent her.

Nothing in the record suggests that Connie was able to pay Nass's fees but refused to do so. Nothing in the record suggests that she was able to borrow money to pay Nass's fees but refrained from doing so. In assessing Connie's level of fault, we note that a mechanism was available to allow Nass to seek attorney's fees and address the circumstances he invoked to justify his withdrawal. This mechanism was not used. The record contains no indication that this mechanism could not have been utilized and no explanation as to why this mechanism was unavailable. Nass filed a motion to withdraw claiming nonpayment of fees shortly before trial was scheduled and — according to Connie — instructed Connie to ask for fees at the withdrawal hearing. Nass did not appear at the withdrawal hearing.

The record does not reveal why a motion for interim fees was not filed in connection with the March 2010 trial setting even though the trial court had awarded

interim fees in February 2008. *See* Tex. Fam. Code Ann. § 6.502(a)(4). When Connie asked for an award of interim fees during the February 10, 2010, hearing, Clifford objected on grounds that no motion requesting such fees had been filed. This objection prompted the trial court to state: "Well, I can't consider a Motion for Fees at this time."

If fault is to be assigned for the failure to seek interim fees under these circumstances, we do not believe that such fault properly can be assigned to the client. We are not persuaded that Connie was at fault because she failed to file a written motion for interim fees before the February 10, 2010, withdrawal hearing.[1] Connie was represented by counsel before the hearing. Connie stated that she followed Nass's instructions and asked the trial court for interim fees at the withdrawal hearing. She stated that she was "astonished that Mr. Nass failed to appear at the [withdrawal] hearing after he informed her that he would personally appear so that he could petition the court" for additional fees by questioning Connie. These statements are uncontroverted on this record. Because nonpayment of fees was the stated reason for Nass's withdrawal on the eve of trial and because there is no contention that interim fees were unavailable, the absence of a motion for interim fees indicates that reasonable steps to avoid prejudice to Connie were not taken. *See Villegas*, 711 S.W.2d at 626.

We are not persuaded by an argument that Connie had more notice of her attorney's intent to withdraw and more time to find new counsel than Villegas did. *Villegas* requires that a party be given "time to secure new counsel and time for the new counsel to investigate the case and prepare for trial." *Villegas*, 711 S.W.2d at 626. Arguably, the circumstances here were even more prejudicial than the circumstances in *Villegas*; if the parties really were "in trial" during the February 10, 2010, hearing, then Nass was allowed to withdraw in the middle of trial. In any event, the timing causes concern even if March 22, 2010, is the operative date.

---

[1] Connie filed a written motion for interim fees on March 12, 2010, asking the trial court to award her interim fees because she is not "in control of sufficient community assets to pay attorney's fees and anticipated expenses." The trial court declined to consider the motion.

Forty days is a substantially shorter period than the almost four months allowed the client in *Gillie* to find a new attorney. *See Gillie*, 65 S.W.3d at 222. Unlike the client in *Crank*, 666 S.W.2d at 94-95, Connie did not fire her attorney. Unlike the client in *Van Sickle*, 467 S.W.2d at 511, Connie detailed her unsuccessful efforts to find a new attorney. Being mindful of the Texas Supreme Court's observation that "Villegas' attorney did not take reasonable steps to avoid foreseeable prejudice to the client" when he withdrew, we conclude that the holding in *Villegas* applies with equal force here: "The trial court should either have denied the attorney's motion to withdraw or granted the party's motion for continuance; it did neither." *Villegas*, 711 S.W.2d at 627.

Clifford also argues that the trial court was allowed to consider the history of this case and the fact that Connie had retained six attorneys, including Nass. During the February 10, 2010, hearing, Clifford argued that an attorney substitution occurs "every time we get down here and get ready for trial."

Serial hiring and firing of attorneys for dilatory purposes would be a legitimate concern to be balanced against a requested continuance in appropriate circumstances. However, this record reveals no evidence that the case was delayed because Connie had hired five attorneys before Nass. Nothing in the record establishes that a continuance was granted or requested in connection with the withdrawal of any of her prior attorneys. The record does not reflect that Connie used the withdrawal of her attorneys as a dilatory tactic. The primary source of delay in this case appears to be an attempted reconciliation. Connie's history of prior representation by other attorneys indicates that she could find attorneys to represent her under the circumstances in which they were retained; this history says nothing about her ability to retain a new attorney on the eve of trial after the withdrawal of her attorney based on the asserted nonpayment of fees.

## Conclusion

Based on the record before us, we conclude that the trial court abused its discretion by denying Connie's motion for continuance after allowing her trial counsel to withdraw over her objection shortly before trial based on nonpayment of an unspecified

fee amount.  Following *Villegas*, 711 S.W.2d at 627, we sustain Connie's first issue.  We affirm the trial court's divorce decree in so far as it grants the divorce, but we reverse the remainder of the trial court's divorce decree and remand for a new trial.[2]


/s/      William J. Boyce
Justice


Panel consists of Justices Frost, Brown, and Boyce.

---

[2] In light of our disposition of Connie's first issue, we need not address Connie's remaining issues.