**Affirmed in Part, Reversed and Remanded in Part, and Memorandum Opinion filed January 8, 2013.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-11-01073-CV

**ROBERT W. JACKSON, INDIVIDUALLY AND D/B/A TOMBALL BOB'S TRACTORS & EQUIPMENT, Appellant**

**V.**

**LONGAGRIBUSINESS, L.L.C. N/K/A FARMTRAC NORTH AMERICA, Appellee**

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2004-58293**

## MEMORANDUM OPINION

This appeal arises out of a breach of contract claim filed by Textron Financial Corporation ("Textron") against appellant Robert W. Jackson, individually and d/b/a/ Tomball Bob's Tractors & Equipment ("Jackson"). Jackson filed a cross-claim against appellee LongAgriBusiness, L.L.C. n/k/a/

Farmtrac North America ("Farmtrac"). The trial court entered judgment in favor of Textron and Farmtrac following a jury trial, and Jackson appeals. We affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

## BACKGROUND

The contracts at issue in this case all relate to Jackson's unsuccessful venture into the business of selling farm equipment. Textron financed the venture, and Farmtrac authorized Jackson to resell Farmtrac equipment as its franchisee. Jackson failed to make a required payment, and Textron brought this suit on October 15, 2004. After significant procedural delays,[1] the case was finally called to jury trial on August 10, 2011.

The jury found in favor of Textron and Farmtrac and assessed $55,896.69 in damages and $100,000.00 in attorney's fees against Jackson. On September 9, 2011, the trial court signed a final judgment in the amount of $221,633.51 in favor of Textron and Farmtrac and against Jackson. That amount included:

- $52,896.69 for actual damages;

- Prejudgment interest beginning October 15, 2004 and accruing at a rate of 10%;

- $100,000 for attorney's fees;

- $3,000 in costs; and

---

[1] The trial court entered a no-answer default judgment against Jackson in 2007; two years later, this court reversed and remanded for further proceedings. *See Jackson v. Textron Fin. Corp.*, No. 14-07-01011-CV, 2009 WL 997484 (Tex. App.—Houston [14th Dist.] April 14, 2009, no pet.) (mem. op.).

2

- $2,057.20 for taxable court costs and expenses and deposition invoices.

Jackson moved for a new trial on eight grounds, including (1) the trial court's failure to grant a continuance after dismissing Jackson's attorney, (2) insufficient evidence supporting the jury award of attorney's fees, and (3) an incorrect calculation of prejudgment interest. The trial court denied Jackson's motion for new trial. Jackson raises five issues in this appeal.

## ANALYSIS

### I.     Motion for Continuance

In his first issue, Jackson argues that the trial court should have granted his motion for continuance and that its failure to do so denied him his right to counsel. He relies heavily on a recent opinion from this court. *See Harrison v. Harrison*, 367 S.W.3d 822 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

This case has been pending since October 2004, but events relevant to this issue focus on August 10, 2011 — the day this case was called to trial. Clay Steely, representing both Textron and Farmtrac, announced ready. Jackson's attorney announced that Jackson (1) had terminated the attorney's representation, and (2) intended to proceed pro se. Jackson had previously filed a motion for continuance without notifying his counsel, and he renewed his request in the trial court. After a short discussion, the trial court dismissed Jackson's attorney and denied Jackson's motion for continuance. The case proceeded to jury trial.

We review the denial of a motion for continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004); *Harrison*, 367 S.W.3d at 826. The trial court's action will not be disturbed unless the record

discloses a clear abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986). In properly exercising its discretion, a trial court may take into account the case's entire procedural history. *See Wilborn v. GE Marquette Med. Sys., Inc.*, 163 S.W.3d 264, 268 (Tex. App.—El Paso 2005, pet. denied); *Waste Water, Inc. v. Alpha Finishing & Developing Corp.*, 874 S.W.2d 940, 942 (Tex. App.—Houston [14th Dist.] 1994, no writ). A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner without reference to guiding rules or principles. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002); *Harrison*, 367 S.W.3d at 826-27.

When the ground for continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to his own fault or negligence. *Villegas*, 711 S.W.2d at 626; *Harrison*, 367 S.W.3d at 827. There is no such showing when the record is silent on the question of whether counsel withdrew without fault on the movant's part. *See Van Sickle v. Stroud*, 467 S.W.2d 509, 510 (Tex. App.—Fort Worth 1971, no writ.). Likewise, a movant does not disprove his own fault merely by showing that other factors contributed to the withdrawal of counsel. *See Waste Water, Inc.*, 874 S.W.2d at 944 (rejecting the contention that "unless absence of counsel was due ***solely*** to the fault or negligence of the party to the suit, a continuance is mandatory") (emphasis in original).

Jackson acknowledges firing his attorney but argues that a "fundamental difference between [himself] and [his attorney] on how to proceed" forced him to do so. He takes the position that, because he had no choice in the matter, he cannot be blamed for his resulting lack of representation: "While there is no question that Jackson 'terminated' his attorney, we must look to the record regarding the question whether or not the termination was voluntary." Jackson cites no authority treating strategic differences as being tantamount to involuntary discharge of

4

counsel, and we have found none. In any event, the record before us does not support Jackson's position. Jackson repeatedly reassured the trial court that he understood the risks of proceeding pro se and intended to proceed despite them. These circumstances indicate that the absence of Jackson's counsel was due to Jackson's own fault or negligence. *See State v. Crank*, 666 S.W.2d 91, 94 (Tex. 1984) (concluding that a party who "voluntarily discharged his attorney and reaffirmed the discharge after his requested continuance was denied" failed to show that his absence of counsel was not due to his own fault or negligence).

The trial lasted five days and encompasses six volumes of reporter's record, but very little of that has any relevance to Jackson's lack of counsel. The issue is covered in a discussion spanning 10 pages in the record. Within that 10-page discussion, Jackson announced his decision to fire his attorney; he also repeatedly assured the trial court and opposing counsel that he was prepared to proceed pro se without further delaying the case. Before the trial court signed the withdrawal order, Jackson made these statements through his counsel:

- "Dr. Jackson wishes to proceed on his own, is aware of the risk associated with it. He's an individual, as a defendant; and he wishes to terminate my services due to a fundamental difference of opinion."

- "In this particular case, Dr. Jackson has chosen to terminate my services and represent himself, proceed forward representing himself."

- "My understanding is my client wants to proceed pro se and terminate my law firm's services as of now."

Jackson did not dispute any of these statements — though he was present in the courtroom when they were made. He made similar statements himself:

5

- "Robert Jackson, appearing pro se for myself; and I have to discharge [my attorney]."

- "I've found it necessary to release my attorney[,] and I'll proceed pro se at this point."

Ultimately, the trial court asked Jackson whether it was "[his] wish to discharge [his] attorney and go forward today pro se without counsel." Jackson said it was, and the court signed a handwritten order of withdrawal drafted by Jackson's attorney, which ordered Jackson's attorney and his law firm to withdraw and "Defendant Robert W. Jackson shall proceed pro se based on his wishes and desires."

Jackson points to *Harrison* in arguing that he was entitled to a continuance to secure new counsel because his attorney withdrew after the case was called to trial. *See Harrison*, 367 S.W.3d at 830. In that case, divorce proceedings had been pending for almost two years when the attorney representing the wife (Connie) filed a motion to withdraw. *Id.* at 324. The attorney was allowed to withdraw based on nonpayment of an unspecified fee amount — over the objection of his client — 40 days before the parties began trying their case to the jury. *Id.* at 830. This court held in *Harrison* that the trial court abused its discretion by denying a requested continuance after allowing the attorney to withdraw. *Id.* at 835. According to Jackson, the facts of his case are more compelling than those in *Harrison* because his attorney was allowed to withdraw after the case was called to trial.

*Harrison* does not support Jackson's argument. It is distinguishable from the facts of this case for the same reasons it was distinguishable from *Crank*:

6

The supreme court held that the trial court acted within its discretion when it denied Crank's motion for continuance after he voluntarily discharged his attorney and reaffirmed the discharge after his requested continuance was denied. The supreme court noted that counsel had not withdrawn voluntarily due to an emergency; rather, Crank knew of the scheduled hearing but waited until the morning of the hearing to discharge his attorney and ask for a continuance. Here, in contrast, Connie did not discharge Nass; she strenuously opposed Nass's withdrawal and filed a motion for continuance after trying without success to retain another attorney.

*Id.* at 833 (internal citations omitted).

Like the appellant in *Crank*, Jackson did not "strenuously oppose" his attorney's withdrawal; instead, he discharged his attorney at the outset of the trial. Jackson has not shown that the trial court abused its discretion on this record. We overrule his first issue. *See Villegas*, 711 S.W.2d at 626; *Harrison*, 367 S.W.3d at 827.

## II. Negligence Instruction

In his second issue, Jackson argues that the trial court erred by failing to instruct the jury on his negligence cross-claim against Farmtrac.

Jackson and Farmtrac entered into a dealer agreement under which Jackson purchased equipment from Farmtrac and resold it to individual customers. Jackson informed Farmtrac that he intended to terminate the agreement; shortly thereafter, several pieces of equipment were stolen from Jackson's property. Jackson alleges that the theft occurred because Farmtrac was negligent in failing to remove the equipment earlier, once Jackson expressed his intent to terminate the dealer agreement. At the charge conference, he proposed the following special issue be submitted to the jury: "Did the negligence[,] if any, of Farmtrac proximately cause damage to the cross-plaintiff, Tomball Bob?"

The determination of whether to submit a particular jury instruction is reviewed for an abuse of discretion. *See State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex. 1997); *I-10 Colony, Inc. v. Chao Kuan Lee*, No. 14-10-01051, ___ S.W.3d ___, 2012 WL 4355534, at *6 (Tex. App.—Houston [14th Dist.] Sept 25, 2012, no pet.). However, the question of whether the charge submits the controlling issues in the case, in terms of theories of recovery or defense, is a question of law which is reviewed *de novo*. *Hamid v. Lexus*, 369 S.W.3d 291, 295 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Braudrick v. Wal-Mart Stores, Inc.*, 250 S.W.3d 471, 475 (Tex. App.—El Paso 2008, no pet.).

The common law doctrine of negligence consists of three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from that breach. *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *Johnston v. Oiltanking Hous., L.P.*, 367 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The threshold inquiry in a negligence case is duty. *Phillips*, 801 S.W.2d at 525; *Johnston*, 367 S.W.3d at 415. The plaintiff must establish both the existence and the violation of a duty owed to the plaintiff by the defendant to establish liability in tort. *Phillips*, 801 S.W.2d at 525. However, if the only duty a defendant owes to a plaintiff is based in contract rather than tort, then negligence damages are unavailable. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991).

Jackson has failed to establish the existence of any duty owed to him by Farmtrac that is distinct from its contractual obligations. *See id.*; *see also Phillips*, 801 S.W.2d at 525. This case arises out of the dealer agreement between Jackson and Farmtrac and alleged breaches of that agreement. Under the agreement, Jackson was to purchase equipment from Farmtrac and resell that equipment to individual customers. As a result, Jackson owned the equipment at the time it was

8

stolen. At trial, a Farmtrac employee testified that when one of Farmtrac's dealers terminated his dealer agreement while he still owned Farmtrac equipment, "as a matter of practice, what we did was try to locate another dealer that would take that inventory." Jackson urges us to find that this practice gave rise to a legal duty in tort distinct from contractual obligations. We decline to do so. *See DeLanney*, 809 S.W.2d at 494.

In the absence of a common law duty in tort owed by Farmtrac to Jackson, there is no basis for a negligence claim. *See id.*; *Phillips*, 801 S.W.2d at 525; *Johnston*, 367 S.W.3d at 415. Accordingly, the trial court's charge properly submitted the controlling issues in the case. *See Hamid*, 369 S.W.3d at 29; *Braudrick*, 250 S.W.3d at 475. We overrule Jackson's second issue.

## III. Prejudgment Interest

In his third issue, Jackson argues that the trial court erred in calculating prejudgment interest. Jackson notes that Farmtrac's proposed final judgment included prejudgment interest at 18 percent and that the trial court struck out the 18 percent figure and wrote in "10%." After doing so, however, the trial court failed to reduce the total judgment amount to account for the lower interest rate. In his motion for new trial, Jackson argued that the judgment amount "should be modified to correctly reflect the amount found by the Court at 10% prejudgment interest." Farmtrac concedes that the amount of interest "may need to be modified" but urges us to render judgment in the proper amount.

When reversing a trial court's judgment or appealable order, we typically render the judgment or order that the trial court should have rendered. *See* Tex. R. App. P. 43.3; *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874 (Tex. App.— Houston [14th Dist.] 2010, no pet.). However, appellate courts must remand a case

9

if further proceedings are necessary or when the interests of justice require a new trial. *See* Tex. R. App. P. 43.3; *Van Heerden*, 321 S.W.3d at 874. This is often the case in situations that require reweighing evidence or finding facts. *Van Heerden*, 321 S.W.3d at 874.

Here, the parties do not agree on the computation of the dollar amount owed. In an amended final judgment, Farmtrac proposed interest in the amount of $37,433.47, calculated at 10 percent from the date suit was filed — October 15, 2004. Jackson disputes this figure, in part because he argues that the prejudgment interest rate should be calculated at 8 percent from the date Farmtrac entered into the litigation — April 25, 2006.

Jackson raises both the 8 percent interest rate and the April 25, 2006 accrual date for the first time on appeal. We conclude that he has failed to preserve these issues, and we do not consider them. *See* Tex. R. App. P. 33.1(a). However, Jackson properly preserved his contention regarding 10 percent interest in his motion for new trial. Jackson has not proposed a prejudgment interest amount himself, though he apparently still disputes the amount proposed in Farmtrac's amended final judgment. We sustain Jackson's third issue and remand this case to recalculate prejudgment interest at a rate of 10 percent from October 15, 2004. *See Van Heerden*, 321 S.W.3d at 874.

## IV.  Attorney's Fees

In his fourth issue, Jackson argues that the jury award of $100,000 in attorney's fees is against the great weight and preponderance of the evidence because the amount does not distinguish between Textron's and Farmtrac's attorney's fees.

A failure to segregate attorney's fees can result in the recovery of zero attorney's fees. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). However, if no one objects to a jury charge in which the jury is not asked to segregate fees, then the objection is waived. *See* Tex. R. App. P. 33.1(a); *Solis*, 951 S.W.2d at 389; *Ogden v. Ryals*, No. 14-10-01052-CV, 2012 WL 3016856, at *4 (Tex. App.—Houston [14th Dist.] July 24, 2012, no pet.) (mem. op.). Jackson did not object to the court's charge on this basis. Therefore, we do not address the segregation of attorney's fees on appeal. *See* Tex. R. App. P. 33.1(a); *Solis*, 951 S.W.2d at 389; *Ogden v. Ryals*, 2012 WL 3016856, at *4. We overrule Jackson's fourth issue.

## V. Court Costs

In his fifth and final issue, Jackson argues that the award of $2,057.20 in court costs is supported by insufficient evidence because it includes costs paid below by Jackson or his attorneys. To correct errors in specific items of costs, a party should file a motion to retax costs. *Wright v. Pino*, 163 S.W.3d 259, 261 (Tex. App.—Fort Worth 2005, no pet.). Jackson did not file a motion to retax costs below, and he cannot complain for the first time on appeal that the trial court erred in awarding those costs. *See id.* at 261-62; *see also* Tex. R. App. P. 33.1(a). We overrule Jackson's fifth issue.

## CONCLUSION

We affirm all parts of the trial court's judgment with the exception of the amount of prejudgment interest; we reverse that part of the trial court's judgment

11

and remand this case for proceedings in accordance with this court's opinion.

/s/     William J. Boyce
         Justice

Panel consists of Justices Boyce and McCally and Senior Justice Mirabal.[2]

---

[2] Senior Justice Margaret Garner Mirabal sitting by assignment.

12