# NO. 12-18-00111-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF J. G.* | § | *APPEAL FROM THE 273RD* |
| | § | *JUDICIAL DISTRICT COURT* |
| *AND J. G., CHILDREN* | § | *SABINE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

R.G. appeals the termination of her parental rights. In three issues, she argues that the trial court abused its discretion by denying her motion for continuance, challenges the sufficiency of the evidence to support the trial court's determination that termination was in the best interest of the children, and argues that the trial court abused its discretion by denying her motion for new trial. We affirm.

## BACKGROUND

J.G. is the father[1] and R.G. is the mother of J.G.1 and J.G.2.[2] On November 17, 2016, the Department of Family and Protective Services (the Department) filed an original petition for protection of J.G.1 and J.G.2, for conservatorship, and for termination of J.G.'s and R.G.'s parental rights. The Department was appointed temporary managing conservator of the children, and J.G. and R.G. were granted limited access to and possession of the children.

---

[1] At the conclusion of the trial on the merits, the jury found that the parent-child relationship between J.G., J.G.1, and J.G.2 should be terminated. Consequently, the trial court found, by clear and convincing evidence, that J.G. engaged in one or more of the acts or omissions necessary to support termination of his parental rights under subsections (D) and (E) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between J.G., J.G.1, and J.G.2 was in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between J.G., J.G.1, and J.G.2 be terminated. The father is not a party to this appeal.

[2] The father and both children have the same initials. We will refer to the children as "J.G.1" and "J.G.2."

At the conclusion of the trial on the merits, the jury found that the parent-child relationship between R.G., J.G.1, and J.G.2 should be terminated. Consequently, on April 26, 2018, the trial court found, by clear and convincing evidence, that R.G. engaged in one or more of the acts or omissions necessary to support termination of her parental rights under subsections (D), (E), and (O) of Texas Family Code Section 161.001(b)(1). The trial court also found that termination of the parent-child relationship between R.G., J.G.1, and J.G.2 was in the children's best interest. Based on these findings, the trial court ordered that the parent-child relationship between R.G., J.G.1, and J.G.2 be terminated. This appeal followed.

## MOTION FOR CONTINUANCE

In her first issue, R.G. argues that the trial court abused its discretion by denying her motion for continuance. She contends that she was denied procedural due process because she was not afforded the opportunity to be properly represented by counsel at trial in a meaningful manner under the circumstances. Thus, she argues, the denial of her motion for continuance caused error that resulted in an improper judgment.

### Applicable Law

Texas Rule of Civil Procedure provides that a motion for continuance shall not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." TEX. R. CIV. P. 251. The denial of a motion for continuance is reviewed under an abuse of discretion standard. *Garner v. Fidelity Bank, N.A.*, 244 S.W.3d 855, 858 (Tex. App.—Dallas 2008, no pet.). The denial will be reversed only if the trial court's action was arbitrary, unreasonable, or without reference to any guiding rules and principles. *Id.* (citing *BMC Software Belg. N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)).

A motion for continuance must include an affidavit stating sufficient cause. TEX. R. CIV. P. 251. Generally, when a movant fails to comply with Rule 251's requirement that the motion for continuance be "supported by affidavit," an appellate court must presume that the trial court did not abuse its discretion in denying the motion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).

Absence of counsel, standing alone, is not good cause for a continuance. TEX. R. CIV. P. 253; *Conti v. Tex. Dep't of Family and Protective Svcs.*, No. 01-10-00185-CV, 2011 WL 286143, at *10 (Tex. App.—Houston [1st Dist.] Jan. 27, 2011, pet. denied) (mem. op.). When the basis for

a continuance is the withdrawal of counsel, the movant must show that the failure to be represented at trial was not due to her own fault or negligence. *Villegas*, 711 S.W.2d at 626; *Harrison v. Harrison*, 367 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). The "absence of counsel will not be good cause for a continuance or postponement of the cause when called for trial, except it be allowed in the discretion of the court, upon cause shown or upon matters within the knowledge or information of the judge to be stated on the record." TEX. R. CIV. P. 253. When considering a motion for continuance, the trial court may take into account the entire procedural history of the case. *See Ruiz v. Ruiz*, No. 02–14–00047–CV, 2014 WL 4458952, at *3 (Tex. App.—Fort Worth Sept. 4, 2014, pet denied) (mem. op.); *Qurashi v. Jabeen*, No. 14–12–00858–CV, 2013 WL 2644182, at *3 (Tex. App.—Houston [14th Dist.] June 11, 2013, pet. denied) (mem. op.).

**Analysis**

In this case, R.G. consistently maintained that she would hire her own counsel. On December 2, 2016, the trial court noted on its docket sheet that R.G. stated she would hire her own counsel. On January 11, 2017, R.G. filed an original answer to the suit through her attorney of record, Michael S. Ratcliff. The trial court's docket sheet noted that on May 10, 2017, Ratcliff filed a motion to withdraw that the trial court granted. Thereafter, R.G. appeared without counsel. According to the docket sheet notes on July 12, 2017, the trial court discussed with R.G. "again" the "serious matter of a trial [without] an attorney" and "encouraged her to request [the] court to appoint counsel if she was indigent." However, according to the docket sheet notes, R.G. did not make such a request and advised the court that she was not indigent and would hire her own counsel.

At the July 27, 2017 hearing, R.G. appeared by telephone without counsel and the trial court stated that it was "very disturbed" that she had not hired an attorney and had not been willing for the court to appoint counsel. At that point, the trial court signed an order appointing an attorney ad litem to assist R.G. if needed.[3] R.G. stated that she appreciated the trial court's actions but told

---

[3] According to the trial court's order, it found that appointment of an attorney ad litem for R.G. was mandatory pursuant to Sections 107.013 or 161.003(b) of the Texas Family Code. Section 107.013 provides for the mandatory appointment of an attorney ad litem to represent the interests of an indigent parent who responds in opposition to the termination of her parental rights filed by a governmental entity. *See* TEX. FAM. CODE ANN. § 107.013(a)(1) (West Supp. 2018). Section 161.003(b) provides for the appointment of an attorney ad litem to represent the interests of a parent against whom a suit is brought under this section, i.e., the parent has a mental or emotional illness or a mental deficiency that rendered the parent unable to care for the child. *See id.* § 161.003(a), (b) (West Supp. 2018)

the court that she spoke to another attorney and would meet with that attorney on the first of August 2017. R.G. was also informed that the trial date was set for September 11, 2017. R.G.'s attorney ad litem filed a motion for continuance on September 5, 2017, stating that as a result of the cancellation of courts due to Hurricane Harvey, the parties agreed to reschedule the trial. The trial court granted the motion, and the trial was rescheduled for December 18, 2017.

On the first day of trial, R.G. and her attorney ad litem filed a motion for continuance. However, no affidavit was attached. The motion requested that R.G. be allowed to withdraw from representing herself and that a "short term" continuance be granted in order to allow her to converse with the attorney ad litem. According to the attorney ad litem, she had been unable to meet with R.G. on an extended basis and was unprepared to adequately represent her. Moreover, she said, R.G. wanted to hire an attorney from California to represent her and was attempting to gather funds to hire that attorney. The other parties objected. The Department noted that R.G. had been offered a court appointed attorney several times and "always" stated that she did not want one. According to the Department, R.G. had "ample" time to hire the attorney of her choice. The children's attorney ad litem noted that R.G. had known for "many, many months" that she needed an attorney for trial and had been told "repeatedly" that she needed an attorney. The trial court denied R.G.'s motion and informed the attorney ad litem that she was "the lawyer" representing R.G. at trial.

First, we note that R.G.'s motion for continuance did not include an affidavit as required by Texas Rule of Civil Procedure 251. *See* TEX. R. CIV. P. 251. Therefore, we must presume that the trial court did not abuse its discretion in denying the motion. *See **Villegas***, 711 S.W.2d at 626. Secondly, the basis for R.G.'s continuance appears to be the absence of her preferred counsel due to her own fault or negligence. The absence of counsel, standing alone, is not good cause for a continuance or postponement of the cause when called for trial. *See* TEX. R. CIV. P. 253; ***Conti***, 2011 WL 286143, at *10. Further, when considering a motion for continuance, the trial court may take into account the entire procedural history of the case. *See **Ruiz***, 2014 WL 4458952, at *3; ***Qurashi***, 2013 WL 2644182, at *3. As noted above, R.G. was given ample opportunity and warnings to either obtain her own counsel or allow the trial court to appoint counsel for her if she was indigent. On each occasion, R.G. refused, stating that she wanted to hire her own counsel and was not indigent. Thus, the evidence supports a conclusion that R.G.'s failure to be represented at trial by her preferred counsel was due to her own fault or negligence. *See **Villegas***, 711 S.W.2d at

4

626; *Ruiz*, 2014 WL 4458952, at \*3; *Qurashi*, 2013 WL 2644182, at \*3. Therefore, the trial court did not abuse its discretion by denying R.G.'s motion for continuance.

R.G. also contends that she was denied procedural due process when the trial court denied her motion for continuance and her appointed counsel was unprepared to try the case. However, in her brief, she characterizes her constitutional argument as to whether she was properly admonished or sufficiently admonished regarding representing herself at trial. The record demonstrates that R.G. was represented by counsel at trial, i.e., an attorney ad litem appointed by the trial court months before trial. The admonishment requirement does not apply to cases in which a party has standby counsel or hybrid representation. *See Dolph v. State*, 440 S.W.3d 898, 907 (Tex. App.—Texarkana 2013, pet. ref'd); *see also Bradford v. State*, No. 05-14-01610-CR, 2016 WL 326631, at \*2 (Tex. App.—Dallas Jan. 27, 2016, pet. ref'd) (mem. op., not designated for publication) (when trial court appoints standby counsel, admonishments regarding dangers and disadvantages accompanying waiver of right to counsel and decision to self-representation are not required). Thus, the trial court was not required to admonish R.G. because she was fully represented by counsel at trial.

We overrule R.G.'s first issue.

## TERMINATION OF PARENTAL RIGHTS

Involuntary termination of parental rights embodies fundamental constitutional rights. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied per curiam*, 53 S.W.3d 684 (Tex. 2001); *In re J.J.*, 911 S.W.2d 437, 439 (Tex. App.—Texarkana 1995, writ denied). Because a termination action "permanently sunders" the bonds between a parent and child, the proceedings must be strictly scrutinized. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976); *In re Shaw*, 966 S.W.2d 174, 179 (Tex. App.—El Paso 1998, no pet.).

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2018); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.—Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the second subsection of the statute. TEX. FAM. CODE ANN. § 161.001(b)(1) (West Supp. 2018); *Green v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b)(2) (West

5

Supp. 2018); ***In re J.M.T.***, 39 S.W.3d at 237. Both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; ***Wiley***, 543 S.W.2d at 351; ***In re J.M.T.***, 39 S.W.3d at 237.

The clear and convincing standard for termination of parental rights is both constitutionally and statutorily mandated. TEX. FAM. CODE ANN. § 161.001; ***In re J.J.***, 911 S.W.2d at 439. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014). The burden of proof is upon the party seeking the deprivation of parental rights. ***In re J.M.T.***, 39 S.W.3d at 240.

## Standard of Review

When confronted with both a legal and factual sufficiency challenge, an appellate court must first review the legal sufficiency of the evidence. ***Glover v. Tex. Gen. Indem. Co.***, 619 S.W.2d 400, 401 (Tex. 1981); ***In re M.D.S.***, 1 S.W.3d 190, 197 (Tex. App.—Amarillo 1999, no pet.). In conducting a legal sufficiency review, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. ***In re J.F.C.***, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. ***Id***.

The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. ***In re C.H.***, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. ***Id***. at 27–29. Further, an appellate court should consider whether disputed evidence is such that a reasonable fact finder could not have reconciled that disputed evidence in favor of its finding. ***In re J.F.C.***, 96 S.W.3d at 266. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. ***Nordstrom v. Nordstrom***, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

6

**Best Interests of the Child**

In her second issue, R.G. argues the evidence is legally and factually insufficient to support a finding that termination of her parental rights is in the children's best interest. In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West Supp. 2018). These include (1) the child's age and physical and mental vulnerabilities; (2) the magnitude, frequency, and circumstances of the harm to the child; (3) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (4) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (5) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (6) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (7) whether the child's family demonstrates adequate parenting skills; and (8) whether an adequate social support system consisting of an extended family and friends is available to the child. *See id.* § 263.307(b)(1), (3), (6), (8), (10), (11), (12), (13).

The evidence need not prove all statutory or *Holley* factors in order to show that termination of parental rights is in a child's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). In other words, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. *In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—

Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28–29. We apply the statutory and *Holley* factors below.

**Analysis**

This case began when Reba Greer, a Department investigator, received an intake on October 25, 2016, alleging domestic violence and drug use at R.G.'s home. She spoke to R.G.'s children at school on that same day. J.G.1, age six, told her that R.G. and her boyfriend, K.L., fought, that his mother received bruises and marks, and that he was afraid of K.L. He said that K.L. whipped him with a wooden board. J.G.2, age five, said that he witnessed fighting between R.G. and K.L., that J.G.1 was afraid of K.L., and that his brother hid to avoid being whipped with a wooden board. The next day, Greer visited R.G. in her home along with R.G.'s two younger children who are not involved in this case. R.G. stated that she and K.L. argued but denied any physical violence. She also said that K.L. did not spank the children "anymore" and that she put the wooden board on the burn pile. R.G. denied drug use, but acknowledged that she had been indicted for possession of a controlled substance.

Although Greer requested that R.G. submit to drug testing, neither R.G. nor K.L. submitted to drug testing until after the family team meeting. The Department admitted records showing that on November 4, 2016, R.G. submitted to a random drug test. Her hair follicle test was positive for amphetamine, marijuana, and methamphetamine, and her urinalysis was positive for amphetamine and methamphetamine. On November 11, 2016, J.G.1's hair follicle test was positive for methamphetamine, and J.G.2.'s hair follicle test was negative. R.G.'s two younger children were also tested for drugs. The older child's hair follicle test was negative while the younger child's hair follicle test was positive for methamphetamine. At that point, the children were removed and placed in foster care. R.G. and the children visited twice a month from December 2016 through March 27, 2017. Ethel Rogers, a foster care caseworker for the Department, testified that R.G. promised the children that she would "bring Christmas," but did not do so in her visits during December 2016, and January 2017. R.G. missed one of the visits and was often late to the visitations. After R.G. refused to submit to drug testing even after being ordered by the court to do so, the trial court suspended her visitation. Thus, she was denied visitation with her children from March 27, 2017, until the date of trial in December 2017.

8

Regarding the needs of the children, the evidence at trial showed that J.G.1 has anxiety and anger problems. His kindergarten teacher stated that he acted out, cried, knocked over chairs, threw things, and ran from workers when they attempted to remove him from the classroom. This behavior occurred before J.G.1 was removed from the home. He would scream that he hated his mother and showed "immediate anger" if R.G. came to the school. According to the kindergarten teacher, his behavior was the worst she had seen in twenty-five years and he was one of the most disturbed children she had taught. However, the kindergarten teacher said that J.G.1's behavior had improved with counseling. J.G.1 was also behind in school and repeated the first grade. After J.G.1 was removed from R.G., he threatened to kill students at school and was paranoid that people were looking at him and talking about him, infuriating him "beyond belief." After moving to another foster home, he threatened to kill the foster mother and people at school and mimicked cutting his throat with scissors and strangling himself with a shirt. Tassie Ferrell, a CASA employee, said that J.G.1 told her that he did not like his foster home and wanted to hurt his foster mother and himself. J.G.1 was hospitalized for a psychiatric evaluation and was given a mood stabilizer and medication for agitation. At the time of trial, he was still in a psychiatric hospital. According to Rogers, J.G.2 was doing well and would be moving to a new foster home soon.

R.G. downplayed J.G.1's behavior. She said that he would get a "little more angry" and had "some" outbursts at school before he was removed. However, she said, J.G.1 had been in counseling and had been getting better. She blamed J.G.1's "mental anguish" on his separation from her. She stated that he was "just fine" and that his anger problems were under control before he was removed from her care.

The evidence showed that R.G., K.L., J.G.1, and the youngest child in the household tested positive for drugs, including methamphetamine. However, other than the initial drug test after the family team meeting, R.G. refused at least three requests from the Department to submit to random drug tests and refused court orders to submit to drug testing during the pendency of the case. She refused even when she was told that visitation of her children hinged on submitting to drug testing. According to Rogers, R.G. stated, "frequently," that she did not trust the Department, that the Department's drug tests were wrong, and that she did not trust their drug testing methods or provider.

R.G. testified that she requested that the children be retested for drugs and was refused. She did not believe the Department's drug tests, "no way." According to R.G., she had the children

retested in March 2017, and the tests were negative. She stated that it was "prove[n]" that there was never a trace of drugs in her children and that they should never have been removed from her care. R.G. did not submit to court ordered drug testing because she did not trust the Department. Moreover, she denied using methamphetamine although she admitted smoking marijuana in the past year.

Regarding her service plan, R.G. participated in creating her family service plan and eventually, signed it. However, Rogers stated that R.G. did not like what she was required to do. R.G. refused to complete a drug assessment, psychological evaluation, or complete anger management classes and parenting classes. According to Rogers, R.G. demonstrated a lack of interest, difficulty in communicating with her, and a "lacksadaisical" attitude towards what was important in the case. R.G. testified that she did not agree with the family service plan and stated that she believed the Department could use the psychological evaluation against her in order to terminate her parental rights. Nor did she believe that she needed parenting classes and believed that she was being bullied by the Department.

R.G.'s boyfriend, K.L., denied spanking the children with a board, but instead, stated that he spanked them with a wooden spoon after receiving R.G.'s permission to do so. Nor did he believe that the children accused him of domestic violence, stating that Greer was lying. According to R.G., there was no domestic violence between her and K.L. She believed the board was a wooden ruler that the children found the week before Greer questioned them. Both R.G. and K.L. had pending criminal charges at the time of trial. R.G.'s charges included possession and manufacture and delivery of a controlled substance. K.L. had pending charges, including aggravated assault with a deadly weapon, child endangerment, and manufacture and delivery of a controlled substance.

Rogers believed that it was in the best interest of the children to terminate R.G.'s parental rights. She stated that she was concerned if the children were returned to R.G. because of her (1) relationship with K.L. involving possible domestic violence, (2) allowing K.L to spank her children with boards, (3) pending criminal drug charges against her, (4) drug use, (5) exposing the children to drugs, and (6) failing to demonstrate an ability to provide a safe environment for the children. Moreover, she said, R.G. did not show a willingness to demonstrate that she would not use drugs. Ferrell also testified that the best interest of the children would be for R.G.'s parental rights to be terminated. She stated that R.G. has not demonstrated that she could provide a safe

and appropriate home that is drug free, and did not provide the Department with a negative drug screen.

**Conclusion**

After viewing the evidence in the light most favorable to the finding and applying the statutory and *Holley* factors, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of R.G.'s parental rights was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Although some evidence might weigh against the finding, such as J.G.1's behavior since being removed from the home and the stability of his home, this evidence is not so significant that a reasonable fact finder could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating R.G.'s parental rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule R.G.'s second issue.

## MOTION FOR NEW TRIAL

In her third issue, R.G. complains that the trial court abused its discretion by denying her motion for new trial. She argues that because the trial court ordered a monitored return, it was evidence that it was not in the best interest of the children to terminate her parental rights.

**Applicable Law**

We review a trial court's denial of a motion for new trial for abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006); *Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex.1994). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). The trial court serves as fact finder at a hearing on a motion for a new trial and, accordingly, is the sole judge of the witnesses' credibility. *Hanners v. State Bar of Tex.*, 860 S.W.2d 903, 908 (Tex. App.—Dallas 1993, writ dism'd).

**Analysis**

On appeal, R.G. contends that her motion for new trial should have been granted because the trial court "ordered a monitored return" and the trial court's comments indicated that the best interests of the children were a "serious concern." During the January 8, 2018 hearing on the

11

motion for new trial, the trial court requested that R.G. submit to drug testing before he ordered a monitored return of the children to her home. At another hearing, R.G. stated that she submitted to drug testing, but not at the facility ordered by the trial court. The trial court gave her another chance to submit to drug testing at the Department's facility. She agreed, and the trial court agreed that if she tested negative, he could order a monitored return of her children. Further, she was ordered to participate in a home study.

At the February 27, 2018 hearing, an officer with the Sabine County Sheriff's office testified that he made a traffic stop and that R.G. was a passenger in the vehicle. He stated that she had a black eye and stated that she was attempting to flee from K.L. The officer discovered syringes, scales with residue consistent with methamphetamine, and two glass pipes containing a substance he believed to be methamphetamine. Further, the officer believed that R.G. may have been under the influence of some type of substance and arrested her for possession of drug paraphernalia and possession of a controlled substance.

R.G. submitted to drug testing in January 2018, and tested positive for amphetamine, marijuana, and methamphetamine. Marco Quesada, a substance abuse program specialist for the Department, testified that the presence of both methamphetamine and amphetamine demonstrates that methamphetamine had been ingested. The presence of only methamphetamine, such as the children's tests in November 2016, would be consistent with exposure or living in an environment where methamphetamine was present. Quesada stated that the level of methamphetamine in R.G.'s drug test was consistent with frequent use, i.e., approximately one dose four or five times during a seven day period. K.L., whom she was still living with in January 2018, also tested positive for methamphetamine and amphetamine. His level of methamphetamine was twice the level of his drug tests in November 2016, which Quesada described as a "binging episode" or a combination of using and manufacturing the drug. At the end of the February hearing, R.G. agreed to participate in a substance abuse assessment. However, when she appeared for the assessment, she refused to sign the consent form for the Department or the trial court to obtain information from the assessment. Nor did she participate in the court ordered home study.

At a subsequent hearing, R.G. stated that she refused to sign the consent form, contending that she was being bullied, did not believe in doing "any of this," and was only comfortable with signing a consent form for the trial court. She agreed to participate in a substance abuse assessment

12

with another counselor. However, R.G. did not appear for the assessment. At the April 2018 hearing, the trial court overruled her motion for new trial.

We note that the trial court stated that any monitored return was contingent upon R.G. testing negative for drugs and participating in a substance abuse assessment. Thus, the evidence shows that R.G. disobeyed court orders, refused to participate in the court ordered home study, continued to test positive for drugs, including levels indicating frequent use, was arrested and charged with possession of drug paraphernalia and possession of a controlled substance after the termination trial, and failed to submit to a substance abuse assessment. Moreover, the trial court could have determined that R.G.'s actions and behavior since the termination trial did not justify a monitored return. Therefore, the trial court did not abuse its discretion by denying R.G.'s motion for new trial.

## DISPOSITION

Having overruled R.G.'s first, second, and third issues, we ***affirm*** the judgment of the trial court.

**GREG NEELEY**
Justice

Opinion delivered October 29, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 29, 2018

### NO. 12-18-00111-CV

### IN THE INTEREST OF J. G. AND J. G., CHILDREN

Appeal from the 273rd District Court
of Sabine County, Texas (Tr.Ct.No. 13,308)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*