**Opinion issued July 31, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00410-CV

———————————

**MONICA F. JACKSON, Appellant**

**V.**

**JAMERE JACKSON, Appellee**

---

**On Appeal from the 311th District Court**
**Harris County, Texas**
**Trial Court Case No. 2015-61110**

---

# O P I N I O N

In this divorce case, the trial court dissolved the marriage of appellant Monica

F. Jackson and appellee Jamere Jackson and awarded a disproportionate share of the

marital estate to Jamere. Monica raises seven issues on appeal, mostly centered

around the trial court's ruling allowing her counsel to withdraw from representation on the morning of trial. Monica contends that the trial court erred by (1) granting the motion to withdraw on the morning of trial because it was procedurally defective and she received insufficient notice; (2) granting the motion to withdraw because there was insufficient evidence to support good cause for the withdrawal; (3) granting the motion to withdraw without sua sponte granting a continuance to allow Monica time to secure new counsel; (4) granting the motion to withdraw, which substantially prejudiced her rights; (5) mischaracterizing separate property as community property and making other errors in the division of the marital estate; (6) denying Monica an in camera hearing in connection with her motion for new trial; and (7) denying her motion for new trial.

We affirm in part and reverse and remand in part.

## Background

Monica and Jamere, both of whom have held several high-level corporate positions, married in California in 2010. Over the next several years, job opportunities took the couple to Ohio and then to Houston. In early 2014, Jamere received an executive-level job offer in Connecticut, which he accepted. Monica, who had quit her corporate job and was focusing on running a business she had started, remained in Houston.

Shortly after moving to Connecticut, Jamere proposed that the parties obtain a divorce. Jamere filed for divorce in Connecticut in August 2015, and Monica, represented by Sam "Trey" Yates, filed for divorce in Texas in October 2015. After the trial court denied Jamere's special appearance, the parties agreed to proceed in Texas, and Jamere filed a counter-petition for divorce in March 2016. Monica hired her second counsel, J. Lindsey Short, in March 2016, and the trial court discharged Yates as Monica's attorney of record.

In August 2016, at a hearing before the associate judge, Short informed the trial court that the case would be a "four-day jury trial." No jury fee had been paid at that time. Short subsequently filed, on Monica's behalf, a fourth amended petition for divorce. This petition included a request for a jury trial and a statement that the jury fee would be paid. It is undisputed that no jury fee was ever paid during the pendency of this case.

On August 29, 2016, the trial court substituted Monica's third counsel, Wendy Burgower, for Short and discharged Short as Monica's attorney of record. Burgower represented Monica up to the day of trial, filing, among other things, a fifth amended petition on Monica's behalf on January 6, 2017. This petition, like Monica's fourth amended petition filed by Short, requested a jury trial and stated that the jury fee would be paid.

Trial in this case was set to begin on Monday, January 30, 2017. At 7:51 a.m. on January 30, the morning of trial, Burgower moved to withdraw as Monica's counsel. The motion stated:

> Good cause exists for withdrawal of Wendy S. Burgower as counsel, in that she is unable to effectively communicate with MONICA F. JACKSON in a manner consistent with good attorney-client relations.
>
> Counsel has prepared for and is ready for trial. Significant conflicts have arisen as to how the case is to be presented and what issues to raise to this Judge, to the point where the undersigned counsel cannot proceed. This counsel cannot resolve the differences.

The motion further stated that it had been delivered to Monica "who is hereby notified in writing of her right to object to this motion." The motion recited Monica's last known address, the settings and deadlines—including a statement that trial was scheduled for January 30, 2017, through February 2, 2017—in the case, the discovery that had been served in the case, and the oral depositions that had occurred. The motion also notified Monica that the motion was set for hearing at 9:30 a.m. on January 30. The motion stated, "You do not have to agree to this motion. If you wish to contest the withdrawal of Wendy S. Burgower as your attorney, you should appear at the hearing. If you do not oppose Wendy S. Burgower's withdrawal as your attorney, you may notify Wendy S. Burgower in writing of your consent to this motion."

4

The trial court held a hearing on Burgower's motion to withdraw immediately prior to the scheduled start of trial. Monica was present and refused to waive her attorney-client privilege with regard to conversations she had had with Burgower.[1]

Burgower presented a copy of a text message she had sent to Monica at 6:56 a.m. that morning, notifying her that Burgower was terminating her contract, that Burgower's motion to withdraw was set for hearing that morning, and that Monica's valuation expert and her exhibits would be ready for trial. Burgower also offered a copy of her contract with Monica into evidence. Burgower stated:

> I had to cancel my contract with Ms. Jackson this morning, as you can see at 6:56 a.m. Without discussing what I consider to be privileged matters, I made my client aware of concerns that I might have to do that, based upon conversations we had starting Thursday [four days before trial]. And my contract specifically, Your Honor, on Page 3 says that I may withdraw from my representation—and by that, I mean my contract with her; I realize that I need the Court's permission—if I believe that, A, she's insisting on presenting a claim or defense not warranted under existing law which cannot be supported by a good faith argument for extension or reversal for such law, if, B— I don't want to say an illegal course of conduct, but I believe to get what she wants might involve something that's highly unethical on my part in my judgment.

> No. 3, that she asked me to pursue a course of conduct which is, I believe, possibly prohibited under the disciplinary rules. Obviously, D, I feel that she has rendered it very difficult for us to carry out employment with her. And more importantly, E, that she insists that I engage in conduct which is contrary to my judgment or my advice.

---

[1] Jamere's attorney offered to stipulate that, during the hearing on Burgower's motion to withdraw, she would not inquire into conversations between Burgower and Monica except those that pertained to the motion to withdraw. The trial court asked Monica if she would be willing to waive the attorney-client privilege for that limited purpose, but Monica responded that she was not willing to do so.

This is not about money, Your Honor. This is about presentation of her case. This came up between the two of us for the first time on Thursday. I thought it had been resolved yesterday. I assert to the Court that, obviously, my hands are tied to [talk] specifically about it. I have a feeling that she'll probably say something that might open the door. I don't want to even go there.

But as this case stands right now, I believe I have properly presented her issues to the Court. I think that I have properly done everything I should. I also believe that—if a carrier needs to go, I think that I have no malpractice.

I think she has issues with what she feels may have been a malpractice, even though I have told her repeatedly I do not believe that her issue is before the Court. I don't know what else to do.

I will assert to the Court that Ms. Jackson spent all day yesterday preparing for me. I would represent to the Court that [Jamere's attorney] and my office have agreed on joint exhibits, proposed division and stipulation of many facts, and even, I think, admission of exhibits. I brought with me to the Court today everything Ms. Jackson needs.

I think—I don't know what Ms. Jackson thinks. She knows when she raised the ongoing issue of contention with me this morning, I told her, Done. Because I had told her yesterday, If this comes up again, I cannot continue.

The trial court asked Burgower, "It is [Monica's] conduct that has forced your withdrawal, or your request to withdraw, so that you can comply with your ethical requirements pursuant to the State Bar of Texas, correct?" Burgower responded, "Yes, ma'am."

Upon questioning from Burgower, Monica agreed that, on the previous Thursday, she and Burgower had discussed "an issue in [the] case about whether something will occur or not that [Monica] want[s] brought to the Court's attention."

6

Monica also agreed that, on the previous day when they were preparing for trial, Burgower told her that if Monica "continue[d] to want to press that issue, [Burgower] was going to quit" and that Monica brought the issue up again earlier Monday morning.

The trial court also asked Monica several questions. Monica told the court that she did not agree with Burgower's withdrawal, and she admitted that she did not understand how the issue that arose between them "compromises [Burgower's] ethics." The trial court and Monica had the following exchange:

| | |
|---|---|
| The Court: | If, indeed—because I certainly don't know what the issue is. But if, indeed—Ms. Burgower has been licensed for quite a long time and certainly I trust her judgment as to knowing what her ethical duties are by the State Bar of Texas. If, indeed, it is a conflict for her, do you have a request of this Court regarding her motion to withdraw? |
| Monica: | So, you're saying if it is a true conflict? |
| The Court: | Correct. For which she would have to withdraw. |
| Monica: | Do I have a request of the Court? |
| The Court: | Correct. I understand you're requesting this Court deny her motion. I'm asking you in the alternative, if this Court were going to grant her motion—I'm not saying I am— but do you have an alternative request? |
| Monica: | I'm not aware of what my options would be; so, it's a little difficult to answer that in the affirmative right now. |
| The Court: | Let me ask you this: Do you agree that Ms. Burgower has on a number of occasions advised you that if you engaged in whatever pursuit or the conduct in which you were engaging that she would have to withdraw? |
| Monica: | Yes. Yes. Absolutely. |

7

The Court: And did you continue to engage in that conduct or that pursuit?

Monica: I did.

Monica further agreed with Burgower that their communications involved Monica insisting on "a right" that Burgower did "not believe is supported by the law" and that Burgower informed Monica that insisting on this right is "contrary to [her] advice."

Jamere testified that he had spoken with Monica by phone in the days leading up to the trial. He stated that Monica told him on the Thursday before trial that she had an issue proceeding with trial because "she expected trial to last longer than two days because we had to do jury selection." Jamere stated that he responded by telling her that he "was not aware that they were having a jury." Jamere's counsel represented to the trial court that there were no property characterization issues that needed to be tried and that the only thing the court needed to hear were "two relatively small issues on values of real property." Jamere's counsel stated that "this is very prejudicial" to Jamere, as he was ready for trial.

Prior to ruling on the motion to withdraw, the parties had the following exchange with the trial court:

Burgower: Judge, and my position is that there is no motion for continuance on file. With those stipulations, Ms. Jackson can present her case. Because, quite frankly, I can't go forward. What am I supposed to do?

8

The Court: I haven't heard a motion for continuance—

Burgower: That's my point.

The Court: —at this point. I've asked if there were any alternative requests. I didn't hear any. So as far as that issue is concerned, that is not before the Court at this time. Anything further, Ms. Cothrun [Jamere's attorney], on the motion to withdraw?

Cothrun: No, Your Honor.

The Court: Okay. After having heard the argument and the testimony in evidence, the Court is going to grant the withdrawal and the Court is going to sign the order of withdrawal. And, Ms. Burgower, you are excused. Thank you very much.

Burgower: I would also represent to Ms. Jackson that all of her exhibits are over there, Judge. They've all been marked and exchanged with counsel, as well as her proposed division. All local rules have been satisfied. I have extra copies of her exhibit list and Jamere's. And I'd ask that I be excused.

The trial court granted Burgower's motion to withdraw and excused her from the proceedings. The trial court immediately proceeded to trial on the merits of the divorce, with Monica representing herself. The trial court pronounced the parties divorced on January 30, 2017, and informed the parties that it would take the division of the community estate, which totaled approximately $8 million, under advisement.

After the trial court signed the final divorce decree on March 10, 2017, Monica retained her fourth attorney, Sallee Smyth, to represent her. At Monica's request, the trial court issued amended findings of fact and conclusions of law on May 3, 2017. The trial court concluded that the property division was "just and right,

having due regard for the rights of each party, with Jamere Jackson being awarded a disproportionate share of the community estate."

Smyth moved for a new trial on Monica's behalf. Among other things, Monica argued that the trial court erred by granting Burgower's motion to withdraw on the morning of trial because the motion did not comply with the requirements for motions to withdraw as set out in the Texas Rules of Civil Procedure and because Monica did not receive reasonable notice of the motion. Monica further argued that good cause did not support Burgower's motion to withdraw and that, upon Monica's statement that she would not waive attorney-client privilege, the trial court should have held an in camera hearing outside the presence of Jamere and his counsel so the court could fully understand the context of the issue that had arisen between Burgower and Monica. Monica also requested an in-camera hearing in connection with her motion for new trial. Monica further argued that the trial court erred when, after granting Burgower's motion to withdraw, it failed to grant a continuance on its own motion to allow Monica time to secure new counsel.

The trial court denied Monica's motion for new trial. This appeal followed.

## Withdrawal of Counsel

In her first, second, third, and fourth issues, Monica contends that the trial court erred by granting Burgower's motion to withdraw. Specifically, Monica contends that the motion was defective and that she did not receive sufficient notice

10

of the filing and hearing. She contends that Burgower offered insufficient evidence to support "good cause" justifying her withdrawal. And she also contends that the trial court should have sua sponte granted a continuance under its inherent authority to manage its docket and to ensure that Burgower's withdrawal would not prejudice Monica. She also argues that the decision to permit withdrawal without granting a continuance prejudiced her rights by placing her at a severe disadvantage during the ensuing trial proceedings.

## A. *Standard of Review and Governing Law*

We review the trial court's ruling granting a motion to withdraw as counsel for an abuse of discretion. *Harrison v. Harrison*, 367 S.W.3d 822, 826 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). A trial court abuses its discretion if it acts unreasonably or arbitrarily without reference to guiding rules or principles. *Id.* at 826–27; *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

The Texas Rules of Civil Procedure provide that an attorney "may withdraw from representing a party only upon written motion for good cause shown." TEX. R. CIV. P. 10; *Harrison*, 367 S.W.3d at 827. In the situation, as here, when another attorney is not to be substituted, the motion to withdraw shall state: that a copy of the motion has been delivered to the party; that the party has been notified in writing of her right to object to the motion; whether the party consents to the motion; the

11

party's last known address; and all pending settings and deadlines. TEX. R. CIV. P. 10; *Integrated Semiconductor Servs., Inc. v. Agilent Techs., Inc.*, 346 S.W.3d 668, 671 (Tex. App.—El Paso 2009, no pet.). "Notice or delivery to a party shall be either made to the party in person or mailed to the party's last known address by both certified and regular first class mail." TEX. R. CIV. P. 10.

Rule 10 does not define "good cause." *Harrison*, 367 S.W.3d at 827. However, the Texas Disciplinary Rules of Professional Conduct set out relevant factors that should be considered when determining Rule 10 motions. *Id.*; *In re Posadas USA, Inc.*, 100 S.W.3d 254, 257 (Tex. App.—San Antonio 2001, orig. proceeding).

Disciplinary Rule 1.15, entitled "Declining or Terminating Representation," states that a lawyer shall not withdraw from representing a client unless:

(1)  withdrawal can be accomplished without material adverse effect on the interests of the client;

(2)  the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes may be criminal or fraudulent;

(3)  the client has used the lawyer's services to perpetrate a crime or fraud;

(4)  a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent or with which the lawyer has fundamental disagreement;

(5)  the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services, including an obligation to pay the lawyer's fee as agreed, and has been given reasonable

12

warning that the lawyer will withdraw unless the obligation is fulfilled;

(6)    the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7)    other good cause for withdrawal exists.

TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9).

Rule 1.15 also provides that, upon termination of the representation, the lawyer "shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payments of fee that has not been earned." *Id.* R. 1.15(d).

In addition to its text, Disciplinary Rule 1.15 also has several comments, including three relevant here. Comment 3 states:

> When a lawyer has been appointed to represent a client and in certain other instances in litigation, withdrawal ordinarily requires approval of the appointing authority or presiding judge. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. The tribunal may wish an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient.

*Id.* cmt. 3. Comment 8 provides that withdrawal pursuant to Rule 1.15(b)(2)–(7) "is optional with the lawyer even though the withdrawal may have a material adverse effect upon the interests of the client." *Id.* cmt. 8. Comment 9 states, "In every instance of withdrawal and even if the lawyer has been unfairly discharged by the client, a lawyer must take all reasonable steps to mitigate the consequences to the client." *Id.* cmt. 9. Before the trial court allows an attorney to withdraw, it should "see that the attorney has complied with the Code of Professional Responsibility." *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *Harrison*, 367 S.W.3d at 827.

A trial court abuses its discretion if it grants a motion to withdraw that does not satisfy the requirements of Rule 10. *Thompson v. Thompson*, 387 S.W.3d 769, 771 (Tex. App.—El Paso 2012, no pet.); *Gillie v. Boulas*, 65 S.W.3d 219, 221 (Tex. App.—Dallas 2001, pet. denied) (stating that Rule 10's requirements are mandatory). However, this error may be harmless if the court allows the party time to secure new counsel and time for new counsel to investigate the case and prepare for trial. *Thompson*, 387 S.W.3d at 771.

**B.     Analysis**

Here, trial was set for Monday, January 30, 2017. On the preceding Thursday, four days before trial, Monica and Burgower had a disagreement concerning a right to which Monica believed she was entitled. Burgower told Monica that she was not entitled to this right and that, if she continued to insist on it, Burgower would

14

withdraw from representation. On the Sunday before trial, Burgower and Monica spent the day preparing for trial. Early the next morning, on the day of trial, Monica again asked about the right to which she believed she was entitled, and Burgower responded by notifying Monica via text message at 6:56 a.m. that she was terminating their contract and that her motion to withdraw would be set for hearing that morning. Burgower filed a written motion to withdraw at 7:51 a.m.

The motion stated that good cause existed for Burgower's withdrawal because she was "unable to effectively communicate with MONICA F. JACKSON in a manner consistent with good attorney-client relations" and because "[s]ignificant conflicts have arisen as to how the case is to be presented and what issues to raise to this Judge, to the point where the undersigned counsel cannot proceed." The motion stated that a copy had been delivered to Monica, and it listed Monica's last known address, the pending trial date of that morning, the previous hearings that had been held, and the discovery that had been exchanged. The motion notified Monica that she did not have to agree to the motion, although it did not state whether Monica consented to the motion. *See* TEX. R. CIV. P. 10 (providing that if another attorney is not to be substituted, motion to withdraw "shall" state whether party consents to motion). The motion stated that it would be heard at 9:30 that morning.

At the hearing on the motion, Monica did not waive her attorney-client privilege, so Burgower's discussion of the dispute between them remained general,

15

and she did not discuss the specifics of her conversations and disagreements with Monica. Burgower did not request an in camera hearing outside the presence of Jamere and his counsel so that she and Monica could discuss their disagreement before the trial court without waiving Monica's attorney-client privilege. After Burgower represented to the trial court that Monica's preferred course of action "might involve something that's highly unethical on [Burgower's] part in [her] judgment" and was "possibly prohibited under the disciplinary rules" and was "contrary to [her] judgment or [her] advice," the trial court questioned Monica about whether Burgower "has on a number of occasions advised you that if you engaged in whatever pursuit or the conduct in which you were engaging that she would have to withdraw" and whether Monica "continue[d] to engage in that conduct or that pursuit[.]" Monica responded in the affirmative to both questions. The court did not ask any questions regarding the substance of the dispute.

Monica did not request a continuance, nor did Burgower request a continuance on Monica's behalf. The trial court asked Monica if she "ha[d] a request of this Court" should the court grant the motion to withdraw. Monica responded, "I'm not aware of what my options would be; so, it's a little difficult to answer that in the affirmative right now." Before the trial court ruled on her motion to withdraw, Burgower pointed out that there was "no motion for continuance on file" and so "Ms. Jackson can present her case." The court affirmed, stating, "I haven't heard a motion

16

for continuance," and "I've asked if there were any alternative requests. I didn't hear any. So as far as that issue is concerned, that is not before the Court at this time." The trial court did not grant a continuance to allow Monica time to secure new counsel. Instead, the trial court granted Burgower's motion to withdraw, excused her from the proceedings, and then immediately proceeded to trial on the merits, with Monica representing herself.

In *Villegas v. Carter*, counsel moved to withdraw twenty days before trial, and the trial court granted counsel's motion to withdraw two days before trial. 711 S.W.2d at 625. Villegas appeared at trial and stated that he had learned about the motion to withdraw six days previously and that he had attempted to hire a new attorney, but the other attorney would not accept representation until he could review the file, which the withdrawing attorney refused to turn over. *Id.* at 625–26. Villegas requested a continuance to obtain a new attorney and his file, but the trial court denied the request and immediately proceeded to trial. *Id.* at 626.

The Texas Supreme Court stated, "The right to counsel is a valuable right; its unwarranted denial is reversible error." *Id.* It held that when a trial court allows an attorney to voluntarily withdraw from representation, the court must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial. *Id.* The court also stated that before a trial court allows an attorney to withdraw, it should "see that the attorney has complied with the Code of

17

Professional Responsibility" and cited the precursor to Disciplinary Rule 1.15(d), which required that, upon termination of representation, lawyer should take "reasonable steps to avoid foreseeable prejudice to the rights of his client," such as giving reasonable notice to the client and allowing time for employment of other counsel. *Id.* The supreme court ruled that the trial court abused its discretion in denying Villegas' motion for continuance because the evidence demonstrated that Villegas was not negligent or at fault in causing his attorney's withdrawal. *Id.* The court reasoned, "The attorney did not give Villegas time to employ new counsel or deliver to Villegas the papers and property to which Villegas was entitled. In short, Villegas' attorney did not take reasonable steps to avoid foreseeable prejudice to the client." *Id.* at 627. The court concluded that the trial court should have either denied the motion to withdraw or granted Villegas' motion for continuance, but instead it did neither, which constituted reversible error. *Id.*

On appeal, Jamere argues that *Villegas* is distinguishable from the present case because, unlike in *Villegas*, in which the client requested a continuance and the Texas Supreme Court held that the client was not negligent or at fault in causing his attorney's withdrawal, Monica's conduct caused Burgower's withdrawal and Monica did not request a continuance. It is undisputed that Monica did not request a continuance after Burgower moved to withdraw. Indeed, when the trial court asked her if she had any "request of this Court regarding [Burgower's] motion to

withdraw," Monica responded, "I'm not aware of what my options would be." When Burgower called the fact that no motion for continuance was on file to the trial court's attention, the trial court responded, "I've asked if there were any alternative requests. I didn't hear any. So as far as that is concerned, that is not before the Court at this time." The court promptly granted the motion to withdraw.

Burgower did not file a motion for continuance on Monica's behalf, nor did she, when Monica chose not to waive the attorney-client privilege, request an in camera hearing to allow Monica and herself the opportunity to fully apprise the trial court of the disagreement that had arisen between them. Nor did the trial court call sua sponte for such a hearing. Instead, Burgower stated generally that Monica had "insisted" that she pursue a course of conduct that Burgower considered "highly unethical" and "contrary to [her] judgment." The trial court then made its decision to allow Burgower's withdrawal based on Burgower's representations and Burgower's and the trial court's cursory questioning of Monica.

Burgower had an independent duty under Disciplinary Rule 1.15(d), upon termination of her representation of Monica, to "take reasonable steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client [and] allowing time for employment of other counsel." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.15(d); *see id.* cmt. 9 ("In every instance of withdrawal and even if the lawyer has been unfairly discharged by the client, a

19

lawyer must take all reasonable steps to mitigate the consequences to the client."). Moreover, the trial court, before allowing an attorney to withdraw, "should see that the attorney has complied with the Code of Professional Responsibility." *Villegas*, 711 S.W.2d at 626. That did not occur in this case. Rather, Burgower moved to withdraw on the morning of trial, providing a mere hour and a half interval between the filing of her written motion seeking withdrawal and the scheduled start of trial, and she took no steps to ensure that Monica had time to seek representation by other counsel in this case involving a multimillion dollar community estate, claims of reimbursement and waste, and at least some valuation disputes. Nor did the trial court take any steps to assure that Burgower had complied with her duties under the Disciplinary Rules of Professional Conduct. The court did not seek to discover the substance of the dispute, nor did it require notice sufficiently in advance to permit Monica to secure other counsel to investigate the case and prepare for trial. *See id.*; *Harrison*, 367 S.W.3d at 827; *see also Downer*, 701 S.W.2d at 241–42 (stating that trial court abuses its discretion when it acts without reference to guiding rules and principles).

A trial court has the authority to continue a case sua sponte, and this decision "rests within the discretion of the trial court." *Dell Dev. Corp. v. Best Indus. Uniform Supply Co.*, 743 S.W.2d 302, 303 (Tex. App.—Houston [14th Dist.] 1987, writ denied). But the trial court abuses its discretion when it acts without reference to any

20

guiding rules and principles, i.e., when it acts arbitrarily and unreasonably. *See Downer*, 701 S.W.2d at 241–42. The trial court here noted that it had not heard a motion for continuance, and, after granting Burgower's motion to withdraw, it immediately proceeded to trial.

We hold that, under the circumstances presented in this case, the trial court erred by granting Burgower's motion to withdraw—a motion filed the morning trial was scheduled to begin that did not state whether Monica consented to the motion, that did not seek a continuance on Monica's behalf, and that did not take into account the foreseeable material adverse effects of self-representation on Monica's interests—without ascertaining the substantive basis of the dispute between Monica and Burgower and, therefore, without determining whether Burgower had good cause to withdraw, and without providing adequate time for Monica to secure other representation and for her new counsel to investigate the case and prepare for trial. *See Villegas*, 711 S.W.2d at 626 ("[W]hen a trial court allows an attorney to voluntarily withdraw, it must give the party time to secure new counsel and time for the new counsel to investigate the case and prepare for trial."); *Moss v. Malone*, 880 S.W.2d 45, 50 (Tex. App.—Tyler 1994, writ denied) (holding that trial court errs by allowing party's counsel to withdraw when motion is deficient under Rule 10 and no steps are taken to protect party's "valuable right" to be represented by counsel of

21

choice); *see also Harrison*, 367 S.W.3d at 827 (setting out relevant factors to consider in determining good cause).

We therefore sustain Monica's third issue concerning the trial court's failure to grant a continuance on its own motion after it allowed Burgower to withdraw on the morning of trial.[2]

## Conclusion

We affirm the trial court's divorce decree to the extent that it grants the divorce and dissolves the marriage of the parties, but we reverse the remainder of the decree as it relates to the division of the marital estate and remand for a new trial.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.

---

[2] In light of our disposition of this issue, we need not address Monica's remaining issues. *See* TEX. R. APP. P. 47.1 (requiring appellate court to hand down opinion that addresses every issue raised and necessary to final disposition of appeal).