**Opinion issued June 6, 2024**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-22-00438-CV

———————————

## IN THE GUARDIANSHIP OF SAMANTHA LUGO, AN INCAPACITATED PERSON

———————————

On Appeal from Probate Court No. 4
Harris County, Texas
Trial Court Case No. 382193

———————————

## MEMORANDUM OPINION

Appellant, Guadalupe Lugo ("Guadalupe"), the mother of Samantha Lugo, an incapacitated person ("Samantha"), challenges the trial court's order granting the amended motion in limine of appellee, Regions Bank, the Trustee of the Section 1301 Management Trust for Samantha (the "Bank"), and finding that Guadalupe had an interest adverse to Samantha such that she had no standing to participate in the

guardianship proceeding. In three issues, Guadalupe contends that the trial court erred in granting her counsel's motion to withdraw without giving her time to find new counsel to defend against the Bank's motion in limine and in appointing appellee, Ginger Lott, as successor third-party private professional guardian of Samantha's person.[1]

We reverse and remand.

## Background

Samantha, in infancy, suffered a brain injury which left her permanently incapacitated, and the settlement of a medical malpractice lawsuit filed by Samantha's parents led to the creation of a trust for her care.

In 2016, Samantha's sister, Guadalupe Leticia Lugo ("Tish"), was appointed as the guardian of Samantha's person. Four years later, in June 2020, the Bank filed an application to remove Tish as guardian. Among other things, the Bank alleged that Tish had "create[d] unnecessary costs and financial drain on [Samantha's] finances," citing various conflicts between Tish and the Bank.[2] Eventually, the Bank agreed not to pursue Tish's removal in exchange for her resignation as guardian of Samantha's person. After Tish's resignation as guardian, the trial court heard

---

[1]    *See* TEX. EST. CODE ANN. § 1055.001.

[2]    The history of this dispute is set forth in detail in our previous opinion in *In re Guardianship of Lugo*, No. 01-21-00403-CV, 2022 WL 17835520, at *1–5 (Tex. App.—Houston [1st Dist.] Dec. 22, 2022, no pet.) (mem. op.).

2

testimony concerning the appointment of Guadalupe as her daughter's guardian of the person but made no ruling at that time as to whether Guadalupe should be appointed successor guardian. It appointed Marissa Garcia to serve as Samantha's guardian ad litem pending contest.

On May 14, 2021, Guadalupe filed a written application for appointment as guardian of Samantha's person.[3] She alleged that she "ha[d] been providing daily care and life decisions" for Samantha, who lived with her, since Samantha was an infant. Guadalupe also pointed out that under the Texas Estates Code, she was qualified to accept letters of guardianship and had priority over other applicants to serve as Samantha's guardian.[4]

On February 11, 2022, the Bank filed an amended motion in limine challenging Guadalupe's interest in the guardianship proceeding. The Bank acknowledged that Guadalupe "ha[d] lovingly cared for her daughter, Samantha, for years, and continue[d] to do so." But the Bank alleged that "[Guadalupe] and Tish [we]re one and the same" and that "[t]hrough her attorney and [Guadalupe], Tish continue[d] to create drama and unnecessary expense." And the Bank argued that Guadalupe had an interest adverse to Samantha because "of her defiance to repay funds" to the trust "and the influence over her by and involvement of [Tish] and

---

[3]     *See* TEX. EST. CODE ANN. § 1203.102(a).

[4]     *See id.* § 1104.102.

Tish's attorneys in the[] guardianship proceeding[]." According to the Bank, Guadalupe owed the trust $40,055.14 because Samantha had to "vacate her home and move into a condominium" when Guadalupe's home was damaged during the extreme cold weather in Texas during Winter Storm Uri in February 2021. Since then, the trust "ha[d] been paying the nearly $9,000 rental on the condominium." And the Bank observed that although the trial court had ordered Guadalupe "to pay $40,055.14 to the trust, she ha[d] not made the payment." Thus, the Bank asserted that Guadalupe had "a financial interest which [wa]s adverse to Samantha and [the trust] . . . such that she lacked standing under Texas Estates Code section 1055.001 to apply for or contest an application for guardianship." The Bank requested that the trial court "(i) intervene on behalf of Samantha, (ii) find that the application for guardianship and the original petition seeking the removal of trustee" filed by Guadalupe "should be dismissed due to lack of standing, and (iii) award all other relief to which [the] trustee [wa]s entitled."

Three days later, on February 14, 2022, Bryan Sample, Guadalupe's then-attorney, filed a motion for withdrawal as counsel. As grounds for withdrawal, Sample asserted that Guadalupe was "unable effectively to communicate with [him] in a manner consistent with good attorney-client relations" and "ha[d] not complied with the terms" of their attorney-client agreement. Sample also reported in the motion that a "Trustee's Motion to Enforce Court's Order" filed by the Bank was

4

set for hearing on March 3, 2022 at 9:30 a.m. But Sample, who had not filed a response on behalf of Guadalupe to the Bank's amended motion in limine, did not identify any other pending motions or hearing settings. A copy of Sample's motion to withdraw was "delivered to the last known address of Applicant [by] certified mail." The motion for withdrawal was set for hearing at 1:30 p.m. on March 3, 2022, the same date as the trustee's motion to enforce.

The March 3, 2022 hearing was held remotely. The trial court first addressed Sample's motion to withdraw. At the trial court's request, Sample clarified that he represented only Guadalupe, and he did not represent Tish. The trial court then stated that it would sign Sample's proposed order granting the motion to withdraw and told Sample to "make sure that it says [Guadalupe] on it."[5] The record, though, does not contain a signed order granting Sample's motion to withdraw.

Next, the trial court proceeded to hear the Bank's amended motion in limine.[6] The Bank called Guadalupe as its first witness. Guadalupe, who was attending the

---

[5]   The record does not affirmatively show whether Guadalupe participated the portion of the hearing addressing Sample's motion to withdraw. She is not listed in the "appearances" portion of the reporter's record, was not announced as present, did not speak, and was not addressed by counsel or the trial court until she was sworn in as a witness for the later portion of the hearing addressing the Bank's amended motion in limine.

[6]   The "Trustee's Motion to Enforce Court's Order" was not addressed at the March 3, 2022 hearing.

5

hearing by telephone, confirmed that she needed an interpreter.[7] She also stated to the trial court that she "d[id]n't have an attorney." The trial court responded that Guadalupe "d[id]n't have an attorney because [she] d[id]n't have an attorney," that she "ha[d] the right to have an attorney, and [she] d[id]n't have one." Guadalupe replied that she "need[ed] one." The trial court told her that she "should have hired one before."

Technical problems ensued during the hearing, and Guadalupe was placed in an electronic waiting room. While Guadalupe was in the electronic waiting room and thus unable to hear or participate, the trial court, the Bank's counsel, and Garcia engaged in a discussion about the pending amended motion in limine. The Bank's counsel proposed that the trial court grant the motion as unopposed because Guadalupe had not filed a response. He also informed the trial court about what the Bank expected the evidence would show. The Bank's counsel suggested that if Guadalupe was "not willing to put on any evidence," he was "willing to put on evidence" and then request that the trial court grant the Bank's amended motion in limine "because [Guadalupe] didn't meet her burden" and "didn't file a response." And the Bank's counsel requested that the trial court "find that [Guadalupe]

---

[7]     A Spanish-English interpreter was present for at least the portion of the hearing in which the Bank elicited testimony from Guadalupe. But because of the frequent technical problems, it is unclear from the reporter's record how much of the rest of hearing was interpreted for Guadalupe and how much her responses relied on her apparently limited ability to understand and speak English.

6

ha[d] . . . an interest that was adverse to Samantha." The trial court asked Garcia whether she objected to the Bank's proposal, and she responded that she did not.

Guadalupe was then brought back into the hearing and sworn in to testify. Guadalupe interjected that she "need[ed] somebody [to] interpret" and "need[ed] a lawyer." The trial court pointed out that Guadalupe had had a month to find new counsel, and Guadalupe responded, "Yeah, only one month." When the Bank's counsel began questioning Guadalupe, she stated again that she "need[ed] lawyer, please in Spanish."

After another technical interruption, the Bank's counsel asked Guadalupe to provide her address. Guadalupe provided it, then repeated that she "need[ed] an attorney" and complained that it was "not fair for [her] not to have one." In response to continued questioning, Guadalupe protested that she "[did]n't understand anything of what's going on" and repeated that she "need[ed] an attorney." The trial court again told Guadalupe that she had been notified that her attorney intended to withdraw nearly a month earlier and thus had "an opportunity to hire an attorney, and [she] chose not to." Guadalupe responded that she had "looked a lot" for an attorney, but "nobody wanted to help [her] because of the [B]ank. They [we]re afraid of the [B]ank." Throughout the hearing, Guadalupe continued to protest that she needed counsel and did not understand the proceeding.

Before the Bank's counsel finished questioning Guadalupe, additional technical problems occurred that resulted in Guadalupe not being able to hear the interpreter. The trial court proposed that the Bank's counsel stop examining Guadalupe and present the rest of the Bank's evidence, after which the trial court would recess the hearing and allow the Bank to present the rest of Guadalupe's testimony in person on a later date. The Bank then presented its remaining witness.

When the Bank finished questioning its remaining witness, the trial court had the interpreter tell Guadalupe that the hearing would be reconvened four days later, on March 7, 2022. Guadalupe responded that "nobody [wa]s translating" the testimony of the Bank's remaining witness for her and she did not understand anything. She also stated that reconvening the hearing so soon would not give her enough time to find new counsel.[8] The trial court nevertheless scheduled the hearing to be reconvened on March 7, 2022.

When questioned about the circumstances of Sample's withdrawal at the March 7, 2022 reconvened hearing, Guadalupe clarified that it was not that she had "allow[ed]" Sample to withdraw, but that "he didn't want to continue" representing her. She did not remember Sample being present at the March 3, 2022 hearing. And

---

[8] In indicating that it was not receptive to moving the reconvened hearing to a later date, the trial court responded to Guadalupe that she had had "ten attorneys." Testimony elicited at the reconvened hearing showed that Sample had been Guadalupe's third attorney in the guardianship proceeding since the guardianship was created in 2016.

she denied that she had "chos[en] to proceed to trial without an attorney." Guadalupe also explained that her "problem" in finding another attorney was "because [she] [did]n't speak English" and could not "communicate directly with them." And she stated that she could not ask Tish to help her find an attorney right then because she and Tish were "always fighting." Throughout the remainder of the hearing, Guadalupe continued to protest that she needed counsel, and she refused to answer the Bank's questions. The trial court stated that if Guadalupe "refuse[d] to answer" the Bank's questions, it was "going to presume that her refusal mean[t] that it [wa]s against [Samantha's] best interest."

At the close of the March 7, 2022 reconvened hearing, the trial court granted the Bank's amended motion in limine and found that Guadalupe had an interest adverse to Samantha. On March 9, 2022, the trial court signed an order granting the amended motion in limine, and on March 23, 2022, the trial court signed an order appointing Ginger Lott as the successor guardian of Samantha's person. In its order appointing Lott, the trial court reiterated its ruling on the amended motion in limine, finding that "[Guadalupe] ha[d] adverse interests to [Samantha] and thus lack[ed] standing to pursue her application" for appointment as successor guardian of Samantha's person.

9

Also on March 23, 2022, attorney Denyse Ward entered an appearance on behalf of Guadalupe, and on April 6, 2022,Guadalupe filed a motion for new trial, which the trial court denied.

**Appellate Jurisdiction**

We first address the Bank's argument that we lack appellate jurisdiction over Guadalupe's appeal from the trial court's order granting Sample's motion to withdraw and the order appointing Lott as successor guardian because Guadalupe's notice of appeal references only the trial court's ruling on the amended motion in limine.[9]

"[C]ourts always have jurisdiction to determine their own jurisdiction," and "[a]ppellate jurisdiction is never presumed." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 146 n.14 (Tex. 2012) (internal quotations omitted); *Florance v. State*, 352 S.W.3d 867, 871 (Tex. App.—Dallas 2011, no pet.); *see also Royal Indep. Sch. Dist. v. Ragsdale*, 273 S.W.3d 759, 763 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (jurisdiction fundamental in nature and cannot be ignored). Whether we have jurisdiction is a question of law, which we review de novo. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

---

[9]  In her notice of appeal, Guadalupe "appeal[ed] from the [trial court's] order of March 9, 2022, granting the [a]mended [m]otion in [l]imine filed by [the] Bank, together with all written orders, oral rulings, and rulings by operation of law, including all pre-trial rulings and orders, and [the trial court's] orders or rulings on all post-verdict and post-judgment motions."

10

A motion in limine in a probate or guardianship proceeding is an evidentiary hearing to determine whether a litigant has standing to participate in the proceeding. TEX. EST. CODE ANN. § 1055.001(c); *see, e.g.*, *Estate of Johnson*, 631 S.W.3d 56, 60 (Tex. 2021) (describing motion in limine procedure in context of will contest); *In re Guardianship of Benavides*, No. 04-19-00801-CV, 2020 WL 7365454, at *4 (Tex. App.—San Antonio Dec. 16, 2020, no pet.) (mem. op.) (explaining nature of challenge to standing in guardianship proceeding).

Generally, parties may appeal only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 & n.12 (Tex. 2001). However, appeals from probate proceedings involve an exception to the final-judgment rule because multiple final judgments may be rendered on discrete issues before an entire probate proceeding is concluded. *See Trevino v. Reese*, No. 01-10-00717-CV, 2011 WL 2436523, at *2 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.); *Young v. First Cmty. Bank, N.A.*, 222 S.W.3d 454, 456 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Two categories of probate court orders are considered final for purposes of appeal even when they do not dispose of all pending parties and claims. *See Crowson v. Wakeham*, 897 S.W.2d 779, 781–83 (Tex. 1995); *SJ Med. Ctr., L.L.C. v. Estahbanati*, 418 S.W.3d 867, 870–71 (Tex. App.—Houston [14th Dist.] 2013, no pet.). First, if a statute expressly declares that the particular phase of the probate

11

proceedings is final and appealable, that statute controls. *Estate of Brazda*, 582 S.W.3d 717, 723 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see also Brittingham-Sada de Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). Second, in the absence of a statute, an order is final if it disposes of all parties and all issues in "the phase of the proceeding for which it was brought." *Mackie*, 193 S.W.3d at 578.

The Texas Estates Code provides that an order appointing a guardian of the person is appealable. *See* TEX. EST. CODE ANN. § 1152.001 (party may "appeal from an order or judgment appointing a guardian"); *see, e.g.*, *In re Phillips*, No. 01-14-01004-CV, 2016 WL 3391249, at *3 (Tex. App.—Houston [1st Dist.] June 16, 2016, no pet.) (mem. op.) (appeal of appointment of permanent guardian). The interlocutory order granting the Bank's amended motion in limine was in the same phase of the guardianship proceeding that resulted in Lott's appointment and thus merged into the appointment order. *See Bonsmara Nat'l Beef Co. v. Hart of Tex. Cattle Feeders*, 603 S.W.3d 385, 387 (Tex. 2020) (noting long-settled rule that party against whom interlocutory order has been rendered will have right of appeal when interlocutory order is merged into final judgment disposing of whole case); *see also Noorian v. McCandless*, 37 S.W.3d 170, 173 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (reference in notice of appeal to interlocutory order instead of final judgment is not jurisdictional error).

We may treat a case that is appealed before the judgment is final as a prematurely filed appeal. *City of Houston v. Spann*, No. 01-22-00848-CV, 2023 WL 5615801, at *3 n.1 (Tex. App.—Houston [1st Dist.] Aug. 31, 2023, no pet.) (mem. op.); *see also* TEX. R. APP. P. 27.1(a), 27.2; *Fusion Indus., LLC v. Edgardo Madrid & Assocs., LLC*, 624 S.W.3d 843, 849 (Tex. App.—El Paso 2021, no pet.). If the trial court signs a final judgment before the appellate court dismisses a prematurely filed notice of appeal, the jurisdictional defect is cured, and the appellate court has jurisdiction over the case. *Fusion Indus.*, 624 S.W.3d at 849. The notice of appeal is deemed filed on the day of the trial court's final judgment—here, the order appointing Lott as successor guardian of Samantha's person. *Id.* We also note that the trial court reiterated its ruling on the amended motion in limine in its order appointing Lott, finding that "[Guadalupe] ha[d] adverse interests to [Samantha] and thus lack[ed] standing to pursue her application" for appointment as guardian of Samantha's person. And we observe that because the trial court found that Guadalupe had no standing in its order granting the amended motion in limine, Guadalupe was precluded from asserting an interest in any subsequent proceedings in the guardianship.

The Bank also asserts that to the extent that the notice of appeal encompasses the trial court's ruling on Sample's motion to withdraw, it is untimely. Generally, a notice of appeal is due within thirty days after the judgment is signed. *See* TEX. R.

13

APP. P. 26.1.  The appellate timetables run from the signing date of whatever order makes the judgment final and appealable, i.e., whatever order disposes of any parties or issues remaining in the appeal.  *Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496 (Tex. 1995); *Noorian v. McCandless*, 37 S.W.3d 170 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also* TEX. R. CIV. P. 329b; TEX. R. APP. P. 26.1.  Here, not only is there no signed order granting the motion to withdraw, a trial court's order granting a motion to withdraw is not an appealable interlocutory order.  *See Davis v. Tex. Dep't of Family & Protective Servs.*, No. 03-10-00624-CV, 2010 WL 4367076, at *1 (Tex. App.—Austin Nov. 5, 2010, no pet.) (mem. op.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014.  But because allowing the withdrawal affected the later rulings challenged by Guadalupe, including the appealable order appointing Lott as successor guardian, we hold that we have jurisdiction over this appeal and thus may consider the trial court's ruling granting Sample's motion to withdraw.

**Motion to Withdraw**

In her first issue, Guadalupe argues that trial court erred in granting Sample's motion to withdraw because the trial court granted the motion without ensuring that Guadalupe's rights were protected and there was no evidence that Guadalupe received a copy of the motion to withdraw.  In her second issue, Guadalupe argues that the trial court erred in not continuing the hearing on the Bank's amended motion

14

in limine because Guadalupe was not given time to secure new counsel prior to the hearing.

We review a trial court's ruling granting a motion to withdraw as counsel for an abuse of discretion. *Jackson v. Jackson*, 556 S.W.3d 461, 467 (Tex. App.—Houston [1st Dist.] 2018, no pet.). An attorney "may withdraw from representing a party only upon written motion for good cause shown." TEX. R. CIV. P. 10; *Harrison v. Harrison*, 367 S.W.3d 822, 827 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). When another attorney is not being substituted, the motion to withdraw must state that a copy of the motion has been delivered to the party, the party has been notified in writing of her right to object to the motion, whether the party consents to the motion, the party's last known address, and all pending settings and deadlines. TEX. R. CIV. P. 10; *Jackson*, 556 S.W.3d at 467. A trial court abuses its discretion if it grants a motion to withdraw that does not satisfy these requirements. *Jackson*, 556 S.W.3d at 467.

Before the trial court allows an attorney to withdraw from representation, it also should confirm that the attorney complied with the professional responsibilities owed to the client. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *see also Jackson*, 556 S.W.3d at 467. Texas Disciplinary Rule of Professional Conduct 1.15, entitled "Declining or Terminating Representation," states that an attorney shall not withdraw from representing a client unless:

15

(1)    withdrawal can be accomplished without material adverse effect on the interests of the client;

(2)    the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes may be criminal or fraudulent;

(3)    the client has used the lawyer's services to perpetrate a crime or fraud;

(4)    a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent or with which the lawyer has fundamental disagreement;

(5)    the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services, including an obligation to pay the lawyer's fee as agreed, and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

(6)    the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

(7)    other good cause for withdrawal exists.

TEX. DISCIPLINARY R. PROF'L CONDUCT R. 1.15(b), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (TEX. STATE BAR R. art. X, § 9).

As to the requirements of Texas Rule of Civil Procedure 10, Sample, in his motion to withdraw, informed Guadalupe only that the Bank's "[m]otion to [e]nforce [c]ourt's [o]rder" was set for a hearing on March 3, 2022. Assuming that Sample had notice that the amended motion in limine was also set for March 3, 2022, his motion to withdraw did not comply with the requirement that he inform his client of

16

all pending settings in his motion.[10]  *See* TEX. R. CIV. P. 10 (motion shall state "all pending settings and deadlines").

Further, although the motion to withdraw notified Guadalupe that she did not have to agree to her counsel's withdrawal, it did not state whether Guadalupe agreed to the motion, and the record does not show that Guadalupe was asked whether she agreed to the motion before the trial court granted it at the March 3, 2022 hearing. An attorney who seeks to withdraw from representing a client who has not secured substitute counsel is required to state in the motion whether the client consents to the motion.  *See* TEX. R. CIV. P. 10; *Jackson*, 556 S.W.3d at 467.  Thus, we hold that the trial court erred in granting Sample's motion to withdraw because the motion did not comply with these requirements of Texas Rule of Civil Procedure 10.  *See Caddell v. Caddell*, 597 S.W.3d 10, 15 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Jackson*, 556 S.W.3d at 467.

---

[10]  The record does not contain a notice setting the amended motion in limine for hearing.  Thus, there is nothing in the record showing that the Bank complied with Texas Rule of Civil Procedure 21, which requires the movant to serve notice of the hearing at least three days before the time specified for the hearing.  *See* TEX. R. CIV. P. 21.  The Bank notes that on February 18, 2022, the trial court coordinator sent an email to the parties' counsel informing them that a hearing on the amended motion in limine was set for March 3, 2022.  The Bank included a copy of that email with its appellee's brief.  Although the email does not appear in the record, we note that the clerk has no duty to record the mailing of the notice.  *See* TEX. R. CIV. P. 165a(1); *Ginn v. Forrester*, 282 S.W.3d 430, 433 (Tex. 2009); *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 849 (Tex. 2004).  But whether Sample knew of scheduled hearing or not, he did not inform Guadalupe of the amended motion in limine's setting in his motion to withdraw.  The motion to withdraw states only that the Bank's motion to enforce was set for a hearing on March 3, 2022.

However, we note that such error may be harmless if the trial court allows the party time to secure new counsel and time for new counsel to investigate the case and prepare for trial. *Jackson*, 556 S.W.3d at 467. But here, the trial court, despite its awareness that Guadalupe did not have substitute counsel, did not continue the hearing on the Bank's amended motion in limine so that Guadalupe could retain new counsel. And the trial court spent no time exploring whether Sample had good cause for terminating his attorney-client relationship with Guadalupe or whether he had complied with the professional responsibilities that he owed her before it granted the motion to withdraw. Significantly, the trial court failed to explore with Sample whether he had determined that his withdrawal could be accomplished without material adverse effect on Guadalupe's interests. *See Villegas*, 711 S.W.2d at 626; *Harrison*, 367 S.W.3d at 827. The failure to make such inquiry is particularly problematic when, as in this case, the withdrawing attorney has not filed a response to a pending motion, requested a continuance, or notified his client of the immediacy of a hearing on an adversary's motion that could be dispositive of his client's interest in the proceeding.

The record shows that allowing counsel's withdrawal without continuing the hearing on the Bank's amended motion in limine had a materially adverse effect on Guadalupe's interest. In its ex parte discussion with the trial court following Sample's withdrawal, the Bank noted that Guadalupe had not filed a response to the

18

Bank's amended motion in limine, and it anticipated that Guadalupe would not be able to satisfy her evidentiary burden to show her interest was not adverse to Samantha. Given the circumstances, the result anticipated by the Bank was a foregone conclusion. In summarily granting Sample's motion to withdraw and refusing to continue the hearing on the amended motion in limine without ensuring that Guadalupe had proper notice of the hearing or continuing the hearing to give Guadalupe additional time to secure new counsel, the trial court prevented Guadalupe from properly being able to present her case. *See Caddell*, 597 S.W.3d at 15; *see also* TEX. R. APP. P. 44.1(a). Accordingly, we hold that the trial court erred in refusing to continue the hearing on the Bank's amended motion in limine to allow Guadalupe time to secure new counsel.

We sustain Guadalupe's first and second issues.

## Appointment of Successor Guardian

In her third issue, Guadalupe argues that the trial court erred in appointing Lott as successor third-party private professional guardian of Samantha's person because the appointment prejudiced and harmed Guadalupe. Specifically, Guadalupe asserts that in finding in that she "ha[d] adverse interests to [Samantha] and thus lack[ed] standing to pursue her application" for appointment as successor guardian of Samantha's person, the trial court prevented Guadalupe from proceeding

19

with her application despite her statutorily preferential status. *See* TEX. EST. CODE ANN. § 1104.102(2).

Because the trial court allowed Sample's withdrawal based on a defective motion, failed to ensure that Sample had complied with his legal duties to Guadalupe before granting his motion to withdraw, and refused to continue the hearing on the Bank's amended motion in limine, Guadalupe was unable to properly defend herself against the motion. And because the trial court granted the amended motion in limine, concluding that Guadalupe lacked standing, Guadalupe was unable to advance her own application for appointment as successor guardian of Samantha's person or participate in any way in the proceedings that culminated in Lott's appointment as successor guardian. Thus, the trial court's error in granting the Bank's amended motion in limine likewise infects its order appointing Lott as successor guardian. *See* TEX. R. APP. P. 44.1(a).

For these reasons, we hold that the trial court erred in appointing Lott as successor guardian of Samantha's person.

We sustain Guadalupe's third issue.

## Conclusion

We reverse the trial court's orders granting Sample's motion to withdraw, granting the Bank's amended motion in limine as to Guadalupe, and appointing Lott

20

as successor guardian of Samantha's person, and we remand the case for further proceedings consistent with this opinion.


                              Julie Countiss
                              Justice

Panel consists of Justices Goodman, Countiss, and Farris.